## STELL'S APPEAL—In re GRAY'S ESTATE.

10  149
134  85

10  149
184  506

10  149
187  251

Where one of two assignees filed a separate account, charging himself with the proceeds of the whole estate, resulting in a balance due to himself, which was confirmed, the surviving assignee cannot be compelled to account for any matters included in such settlement, though it appears he joined in a conveyance the proceeds of which entered into such account. For trustees are not liable for the acts and omissions of their co-trustees, unless there be fraud or negligence; and then only where the estate of the defaulting trustee is insolvent: and the account filed and confirmed is conclusive in favour of the assignee filing it.

FROM the Common Pleas of Philadelphia.

*March* 13.   In 1836 Mrs. Vanarsdall filed a petition in the Common Pleas, setting forth, that in 1818 Gray made an assignment, for the benefit of creditors, to Billington and Richards; that petitioner was a creditor of Gray; that Billington was dead, and Richards had never filed an account; and prayed a citation to compel a settlement.

The answer of Richards set up, that he had never taken an active part in the trust, nor received any moneys, and that Billington, who had exclusively managed the trust, had filed an account in 1828. He admitted that, as assignee, he had executed a deed in 1824, but no part of the consideration-money was received by himself.

The replication averred, that Richards did take an active part in the trust, and had executed deeds, transferring valuable estate for valuable considerations, for which he was accountable.

A reference was made to an auditor, to report whether Richards had made himself liable to account, and to report the evidence.

The report of the auditor set forth the evidence on the disputed fact, whether Richards had accepted the assignment; but, as that is assumed by this court, it is unnecessary to state the evidence.

It further appeared by the report that, at the instance of Stell, representing Mrs. Vanarsdall, Billington filed an account, as assignee, in 1828, which account was never excepted to, and was of course confirmed. In it the accountant charged himself with the proceeds of all the assigned estate, and it resulted in a balance due the accountant. After that, two actions were brought against the assignees, in one of which there was a verdict for the plaintiff, but a new trial was granted, when it was abandoned, and a new action brought, in which the plaintiff was nonsuited by the court.

The auditor further reported, that it did not appear that any money had been received by Richards; and the settlement of the

account of Billington, as assignee, having been final, he was of
opinion Richards was not liable to account.   This report was con-
firmed; and on appeal, the questions were, 1. Whether Richards
had accepted the assignment?   2. Whether he was chargeable
with the proceeds of sale of the assigned estate, conveyed by the
deed in which he joined, or was in any other respect liable there-
for?   This deed was dated March 1, 1824, and purported to convey
certain specified property, and all the residue of the assigned
estate.   But in the account filed by Billington, under date of
March 22, 1824, the accountant debited himself with the proceeds
of that sale, $6,750, which account, as before stated, was filed in
1828, and confirmed in due course.

*Randall*, for the appellant, after examining the evidence of the
acceptance of the trust, contended that Richards was bound to
account for the proceeds of the sales in which he joined, and that
he was compellable to file an account of his own acts as assignee.

*Tilghman*, contrà, contended that the evidence showed that
Richards never had accepted the trust, but, if he had, there was
no evidence he had received any part of the estate; and that the
account of Billington was conclusive that the estate was then
finally settled, and hence Richards was not liable to account.

*March* 26.   BELL, J.—This is an ancient controversy; but, in
our apprehension, not difficult of determination.   The view we take
of it relieves us from the necessity of considering the somewhat
conflicting evidence upon the question whether Mr. Richards, in
fact, assumed the duties of trustee, under the deeds executed by
Robert E. Gray.   Admitting that he did not, directly, disclaim
the office, but remained passive during the active administration of
it by Billington—and this is the utmost that can be claimed by the
appellant—the inquiry still remains, do the conceded facts make
his estate liable to account for any part of the trust-fund?   If not,
there can be no pretence to compel his representatives to settle an,
account, for the sole purpose of making his estate responsible.

The trust was created in 1818.   At the end of nearly ten years,
on the petition of Mrs. Vanarsdall's trustee, the assignees were
cited to account.   This call was answered by Billington alone, who,
as acting assignee, on the 15th of September, 1828, settled an
account which purports to cover the whole trust-estate, including
the realty conveyed to Samuel N. Gray; the only item against

which, on the argument here, objection was pointed. To this account the usual affidavit of its verity was appended. It would seem to have been satisfactory to the parties in interest, for no exception was taken to it by the now appellant, on whose call it was furnished, nor by any one else. So far as is shown by the record, it has never been formally impeached, for though, after its settlement, an action was instituted in the Supreme Court against both of the assignees, this was in December, 1835, disposed of by *nonsuit*, ordered by the judge who presided at the trial. In May, 1837, the appellant, by petition representing the death of Billington and that Richards had survived, prayed a citation against the latter commanding him to settle an account of the assigned estate. This petition did not notice the account filed by the acting assignee, nor did it suggest that other trust-property or effects had come to the hands of the survivor. Indeed, up to this moment, no such allegation has been ventured either by matter of record or *in pais*, so far as we are informed. In answer to the second citation, Richards, on the 23d of June, 1837, averred under oath that he had never taken an active share in the management of the trust, but had constantly refused to do so; that he had never received any property under the assignment, and therefore could not exhibit an account; that Billington, who had exclusively managed the trust, settled an account thereof in 1828; and that he, Richards, in the year 1824, for the sake of conformity executed one or more deeds conveying part of the assigned estate, which were presented to him with the information that his signature was requisite as a legal form, in consequence of his name being used in the assignment. This answer remained on file unanswered for nearly four years, when, in December, 1840, Mrs. Vanarsdall, by her trustee, put in a replication averring that Richards did take an active part in the execution of the trust, and that, as assignee, he executed conveyances of valuable estates and property, for *the purchase-money of which he was liable to account*. In December, 1841, the subject was referred to an auditor to examine and report whether Richards had rendered himself liable to account as assignee; with a direction to return the testimony. On the 3d of March, 1845, the auditor reported the facts, and his opinion, formed therefrom, that Richards was not, in his lifetime, nor are his executors, since his death, liable further to account under the citation. To this report Mrs. Vanarsdall's trustee filed exceptions, which were overruled by the Court of Common Pleas, and the report of the auditor confirmed

on the 16th of February, 1846. From this decree the pending appeal is taken.

This is a brief history of the leading points of the controversy. By it these prominent facts appear beyond contradiction: first, that Billington was the active and sole acting assignee; second, that through the active agency of the now appellant, he was compelled to and did settle his account in the year 1828, including the whole of the trust-property, which account, with the knowledge, and directly under the eye of the complaining party, was filed of record in the proper court, and has so remained for a period of upwards of twenty years; third, that the avails of the estates mentioned in the replication of Mrs. Vanarsdall, are included in and accounted for by Billington's account; and, fourth, up to this moment, there is no allegation that Richards received a dollar of the trust-fund, or that there is any portion of it unaccounted for. Putting the case in the most favourable point of view for the appellant, these facts prove that Richards, in his lifetime, occupied the position of a co-trustee, who had never actively intermeddled with the trust-property, all of which had been administered by his fellow, and by him accounted for, without objection. Why then call for another account? As already intimated, it must be solely with the view of charging the estate of the surviving assignee with the several sums received by his colleague. But this, under the facts that have place here, cannot be done, not even in respect of the consideration-money, for which the trustees gave a joint receipt, but which went exclusively into Billington's hands. It is a trite rule of equity, that, of several trustees, he who actually receives the fund is alone liable, unless there be circumstances of fraud or gross negligence. Some diversity of opinion seems to have prevailed as to the joint liability of executors, who unnecessarily join in a receipt for trust-money. At one time it seems to have been received as an inflexible rule, that where executors joined in a receipt they were jointly chargeable, on the ground that a joinder was unnecessary unless they intended to be responsible for each other. But this rule has never extended to trustees created by deed, since it was necessary all should join in the execution of the trust, and, consequently, were compellable to execute joint receipts, though one of them only received the fund. And even in the case of executors, modern good sense, looking beyond the technical reason of the rule, which was supposed to be applicable to the peculiarity of the trust devolved on them, seems to have broken down the distinction between them and other trustees, by denying that, in

reason, an intent to be jointly chargeable is deducible from the mere fact of joining in a receipt: per Lord Eldon, 16 Ves. 479; McNair's App. 4 R. 148; Brown's App. 1 D. 311; Sterrett's App. 2 Penna. 420–1; Vernon *v.* Henry, 6 W. 192. And now, as is said in Boyd *v.* Boyd, 1 W. 367, a train of authorities puts it beyond dispute that executors who give no bond, and general trustees, are liable only for the amount that comes to their hands, though it is otherwise with administrators who, by giving bonds, become sureties for each other. In the administration of this rule, the right of trustees, including executors, to settle separate accounts, showing their separate receipts and disbursements, is constantly recognised. It has never been thought, so far as I am aware, that a legatee or creditor could compel each trustee to account for the whole of the trust-estate; to charge himself with what had passed solely through the hands of his colleague; or to account at all, where he had received nothing of the trust-property, unless under very special circumstances, which have no existence here.

But there is another unanswerable objection to the present attempt. There is no such thing as the liability of one joint trustee for the misfeasance or nonfeasance of another, unless that other, from insolvency, is unable to answer for himself. Until then, there can be no loss; and it is only when a loss occurs the non-receiving trustee is ever held liable. He becomes obnoxious to complaint only when his culpable negligence has enabled his companion to squander and dissipate the trust-property. But this cannot be averred, where the companion continues to possess the representative of that property. In the case in hand, there is no whisper that Billington's estate is bankrupt. The attempt to charge Richards's estate would, therefore, seem to resolve itself into an effort, indirectly, to overhaul Billington's account, which lapse of time and long acquiescence in its correctness protect from a direct assault.

To prevent misapprehension, it may be well enough to notice, that no impropriety in effecting the sale to S. N. Gray, in which Richards participated, is averred. Nor is inadequacy of price alleged. The only ground upon which an account is demanded from the personal representatives of Richards, on that score, is, that the considerations for the conveyances "were large sums of money, for which the said Samuel Richards is accountable." But it is shown that Richards received no part of these sums, and that Billington has accounted for the consideration of the sales.

It is, long since, time this controversy was ended. We feel

satisfied this determination of it is placed upon a basis equally in accordance with the strictly legal and equitable rights of the litigants, and the abstract justice of the case.

Decree affirmed.