78 Wyo. 173 (1958)
320 P.2d 429
In the matter of the Estate and Guardianship of Emily M. Johnson, an incompetent person.
Eric S. Alanko, Administrator with the Will Annexed of the Estate of Emily M. Johnson, deceased, Objector and Appellant,
v.
V.L. Wayman, Guardian and Oliver W. Steadman, Co-guardian, Respondents.
In the matter of the Estate and Guardianship of Emily M. Johnson, an incompetent person.
Eric S. Alanko, Administrator with the Will Annexed of the Estate of Emily M. Johnson, deceased, Objector and Respondent,
v.
V.L. Wayman, Guardian and Oliver W. Steadman, Co-guardian, Appellant.
Nos. 2794 and 2795.
Supreme Court of Wyoming.
January 14, 1958.
*177 For the appellant in Case No. 2794 and the objector and respondent in Case No. 2795 the causes were submitted upon the briefs of Goppert and Fitzstephens of Cody, Wyoming, and oral argument by Mr. J.D. Fitzstephens.
For the respondents in Case No. 2794 and for appellant in Case No. 2795 the causes were submitted upon the briefs of Steadman and Steadman of Cody, Wyoming, and oral argument by Mr. Oliver W. Steadman.
Heard before Blume, C.J. and Harnsberger and Parker, JJ.

*178 OPINION.
Mr. Chief Justice BLUME delivered the opinion of the court.
This case involves the guardianship of Emily M. Johnson, the final accounting filed by the guardians and the objections thereto by the administrator with the will annexed of the estate of Emily M. Johnson.
*181 On April 14, 1949, Eric S. Alanko, who is also administrator as above mentioned, filed a petition in the District Court of Park County, Wyoming, asking for the appointment of a guardian of Emily M. Johnson. An order to that effect was made on May 12, 1949; V.L. Wayman and Oliver W. Steadman were appointed guardians and they qualified on June 6, 1949. It might be mentioned incidentally that it does not appear how incompetent Emily M. Johnson was at the time of the appointment of the guardians. She made several wills which were contested and the jury impaneled in the will-contest case answered that Emily M. Johnson was of disposing mind and memory at the time of the execution of her various wills, namely on February 21, 1949, December 14, 1949, and February 15, 1950. The guardians filed an accounting about annually and made their final report on February 25, 1953, stating that Emily M. Johnson died on the morning of February 13, 1953. They reported total receipts of $4,387.47 and disbursements of $3,333.63, leaving on hand the sum of $1,053.84. They did not mention the items in controversy here. They asked that allowance be made them as guardians and that the balance be paid over to the executor of the estate of Emily M. Johnson, deceased. On October 1, 1953, Eric S. Alanko filed his objection to the discharge of the guardians on account of the fact that they had received $5,000 or more from the First National Bank of Powell, Wyoming, and for which they had not accounted. An amended objection was filed on January 15, 1954, alleging the appointment of Eric S. Alanko as administrator of Emily M. Johnson with the will annexed, and that he qualified as such. It also alleged the appointment of the guardians and the fact that they qualified. It further alleged that V.L. Wayman received from the deceased the sum of $1,900 on April 23, 1949; that such sum was received by Wayman when Emily M. Johnson was *182 incompetent; that Emily M. Johnson had on deposit in the savings account of the First National Bank of Powell the sum of $5,000 in cash which had been deposited in the bank on April 1, 1949; that on April 14, 1949, deceased, acting under the influence of V.L. Wayman, authorized Wayman to sign checks on such account; that the account, however, remained in the bank until April 16, 1953, at which time it had accumulated to $5,347.59; and that on that date V.L. Wayman, one of the guardians, with the aid and assistance of his co-guardian, Oliver W. Steadman, converted that money from the guardianship and removed it to the possession and control of V.L. Wayman individually. The administrator with the will annexed accordingly prayed that the guardians file an inventory in the case and that they account for the item of $1,900 and the sum of $5,347.59 which had been converted by the guardians for the use and benefit of V.L. Wayman. On May 1, 1956, the court made an order in the matter but vacated it on May 4, 1956, on its own motion, and finally on July 13, 1956, made an order which is as follows:

"ORDER DIRECTING PAYMENT BY GUARDIANS
"This matter came on to be heard the 28th day of October, 1954, upon the Final Report and Account of the Guardians of the above entitled estate, and the objections filed thereto by Eric S. Alanko, the Administrator with Will Annexed of the Estate of Emily M. Johnson, deceased. The Guardians Oliver W. Steadman and V.L. Wayman, appeared in person and by counsel, Jack F. Lewis, and the Objector, Eric S. Alanko appeared in person and by counsel, Messrs. Goppert and Fitzstephens. Evidence was introduced; the matter was argued by counsel and by Oliver W. Steadman, pro se, and the Court being fully advised in the premises, FINDS:
*183 "1. That there remains in the hands of the said Guardians, the sum of $1,053.84, less $400.00 attorneys' fees and $10.90 as court costs, as reported in said Final Report on file herein, and in addition thereto the sum of $35.03 on deposit in The First National Bank of Powell to the credit of said Guardians not accounted for in said Final Report;
"2. That in addition to the above, the said Guardian V.L. Wayman received, on April 23, 1949, from the said Emily M. Johnson, while she was incompetent, the sum of $1,900.00 not accounted for in said Final Report;
"3. That, in addition to the above, the said Guardians received the sum of $5,000.00 belonging to the said incompetent in a savings account in The First National Bank of Powell, which sum has never been accounted for and which said savings account, together with the accrued interest thereon totalling the sum of $5,347.59, was taken from said savings account by said Guardians on April 16, 1953.
"4. That as a credit against the sum of $1,900.00 received by the said V.L. Wayman, on April 23, 1949, said Guardian is entitled to the sum of $1,010.75 as compensation to him for the care and maintenance of said Emily M. Johnson from January, 1949, to August, 1949, and as a credit against the sum of $5,347.59 taken from the said savings account on April 16, 1953, said Guardians are entitled to the sum of $489.25 for funeral expenses paid by them;
"5. That all amounts unaccounted for, less the credits above mentioned, shall bear interest at the rate of 7% per annum from October 1, 1953, the date of filing the first objections by Eric S. Alanko, and the whole of said amounts, plus interest should be paid by said Guardians to Eric S. Alanko, as Administrator with Will Annexed of the Estate of Emily M. Johnson, and the total payable is the sum of $6,823.34;
"NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED said Final account is *184 disapproved, and that said Guardians V.L. Wayman and Oliver W. Steadman pay the sum of $6,823.34 to Eric S. Alanko, Administrator with Will Annexed of the estate of Emily M. Johnson, deceased, both of said sums to bear interest at the rate of 7% per annum, until paid, and upon such payment, the said Guardians and the sureties on their official bonds shall be released of further liability and the said Guardians shall be discharged.
"To all of which, each party by his counsel, duly excepted.
"Dated this 12th day of July, 1956.
 "[Signed] D.J. Harkins
 "Judge."
All the parties gave notice of appeal herein. Counsel for V.L. Wayman, however, after notice was given to the latter, withdrew as attorneys for him and he failed to employ other attorneys and his appeal was never perfected and is not pending before us.

A. On the appeal of Eric S. Alanko, Administrator.
1. The court allowed the guardian as above noted the sum of $400 as attorneys' fees. It is contended by counsel for the administrator that this amount is too high. The allowance of the attorneys' fee was in the discretion of the court and the amount is not so exorbitant that we can say that the court abused its discretion.
2. The court allowed V.L. Wayman the sum of $1,010.75 as compensation to him for the care and maintenance of Emily M. Johnson from January 1949 to August 1949. It is contended by counsel for the administrator that this amount was too high and they *185 mention the fact that subsequently she was cared for at the sum of seventy-five dollars a month. It is very common knowledge that the cost of living in these days is very high and a trial court cannot be assumed to have had less knowledge than what is common. We do not think the amount allowed is so exorbitant as to require us to interfere with the order of the trial court in this connection.
3. On April 23, 1949 Emily M. Johnson gave to V.L. Wayman the sum of $1,900. That was before Wayman became or was appointed guardian. He testified in that connection that he did not owe anybody for this $1,900. He stated "that was given back to her. I gave her $100.00 that day [April 23, 1949]. I only put $1,800.00 in the bank; it shows on my statement; she would pay all the expenses; we used that money while I was taking her around. She wanted to go all the time. It was her pleasure travelling around; she paid all the expenses out of that. I handed that back to her, give her a hundred dollars at a time." He further testified that they traveled around to various places including Red Lodge, Cody, Powell and other places, and finally he stated, "She got it all back, every cent of it. I didn't keep no records at all. She didn't ask me to keep any record of it at all." This evidence is uncontradicted. Counsel for the administrator say that he should have submitted vouchers and cite the statutory provision that a guardian should submit vouchers for any expenses incurred by him. However, the $1,900 was paid to Wayman before he became guardian so that statutory provision or any decisions under it would hardly be in point.
Counsel for the administrator claim that interest ought to be allowed on this $1,900 from April 23, 1949, whereas the court allowed interest on that amount, *186 less the credit thereon, from October 1, 1953. The question of interest when no contract to that effect exists is not as simple as counsel for the administrator seem to think. If Wayman was liable for interest at all, he was liable because he converted that $1,900 to his own use. The unlawful conversion, if conversion it was, was a simple conversion, not one in a fiduciary capacity, since Wayman received the money before he became guardian. In 89 C.J.S., Trover & Conversion, § 239b, p. 689, the rule is laid down that in case of conversion of property, the allowance of interest is discretionary with the jury. If that is true, it must also be true when the hearing or trial is had before the court without a jury. The text mentioned, which is supported by recent authority, states as follows:
"Interest, eo nomine, is not recoverable in a bail trover action. Such an allowance is not awarded as interest but as additional damages, and the allowance is discretionary with the jury. * * *"
The distinction between interest proper and damages is considered in 25 C.J.S., Damages, § 52, p. 537.
If we take the text above mentioned as correct, it would not be necessary to consider the subject of interest in this case any further. However, we find the matter interesting and have considered it at some length. 1 Sedgwick on Damages, 9th ed.,p. 552, treats the subject at considerable length commencing with § 282. He cites numerous, somewhat earlier, cases from New Hampshire, New York, Kentucky, North Carolina, and Pennsylvania, which held that the allowance of interest in damage cases when no contract for interest has been made is in the discretion of the jury. The author states that the later cases seem to be more liberal in allowance of interest than the earlier cases, although the author says that the rules have *187 not yet become clear cut. The subject is also considered at great length by 1 Sutherland Damages, 4th ed., § 300 and subsequent sections. In § 321 at pp. 1004, 1005, he states as follows:
"It will appear more fully hereafter that the right to interest as compensation is not absolute, as it is where there are agreements made to pay it. In some jurisdictions the allowance of it is discretionary with the jury, in others with the court, and in others it cannot be allowed in a numerous class of cases as interest, though the lapse of time between the origin of the cause of action and the time of trial may be considered by the jury in estimating the damages. * * *"
In 25 C.J.S., Damages, § 52b, pp. 538, 539, it is stated:
"As a general rule, interest cannot be recovered as a matter of right in an action of contract on an unliquidated or disputed claim. However, in some jurisdictions the allowance of interest on such claims is discretionary with the jury or with the court in the case of a trial to the court * * *."
And on p. 540 it is stated:
"It has been held that, where the amount of the demand is disputed on reasonable grounds and in good faith, or the right to recover is in good faith denied, interest will not be allowed on the demand prior to its liquidation by verdict or otherwise. There are, however, numerous authorities to the contrary. * * *"
The first part of this latter statement and the corresponding discussion in 17 C.J. 818 is sustained by cases cited from the United States, Illinois, Michigan, Oregon, Wisconsin, Maine and Quebec. There is nothing in the record to indicate that the contention of Wayman to the effect that he is not liable for the $1,900 has not been made in good faith. Particularly in view of the undisputed facts herein, we see no sound reason to hold that the trial court abused its discretion *188 in allowing interest only from October 1, 1953, or to hold that it was improper for the trial court to apply the rule laid down in 89 C.J.S., Trover & Conversion, § 239b, p. 689, heretofore quoted.
While § 39-1104, W.C.S. 1945, relating to interest, is broad in its terms, we hardly think that it should be applied in a case such as before us. In view of the evidence herein, Wayman could not possibly know that he was liable for the $1,900, let alone the interest thereon, until the judgment of the court was rendered herein. See Dawson, Corbett and Shelp v. Lieurance and Canfield Const. Co. 68 Wyo. 465, 235 P.2d 457 and cases cited. In view of what we have said herein, and in view of no appeal of Wayman being before us, we have not deemed it necessary to pass upon the contention as to whether or not the court had any power sitting in probate to render judgment against Wayman for the amount mentioned.
4. The sum of $5,000 was deposited to the joint account of Wayman and Emily M. Johnson in the First National Bank of Powell, Wyoming, on April 14, 1949. The money remained in the savings department of the bank until April 16, 1953, when Wayman withdrew it, which, together with interest, made a total of $5,347.59. While the court allowed interest on this as of October 1, 1953, it is contended that the interest should have been allowed as of April 16, 1953. We are inclined to believe that the contention of counsel for the administrator is correct. The matter in connection with the $5,000 is quite different from that mentioned in connection with the $1,900. When Wayman withdrew the money from the bank, he was guardian, hence acting as a trustee. He invested some of the money, according to his testimony, on his own account. On February 14, 1953, he made application to be appointed *189 executor of Emily M. Johnson, then deceased, and listed as part of the property owned by the estate of Emily M. Johnson a savings account of $5,000. He was acting in a fiduciary capacity during the time that he withdrew the money, and we think that he should pay interest on the amount which he withdrew as of April 16, 1953. See 39 C.J.S., Guardian and Ward, § 87, p. 150, n. 14.
5. While we are discussing the question of interest, we should, we think, in order that the whole matter before us may be finally disposed of, mention another matter. The court allowed interest as of October 1, 1953, on all amounts then due. On the face of it, that includes interest on $1,053.84 plus $35 in the bank, less $400 allowed as attorneys' fees, that is to say, interest on $688.84. This matter is not specifically mentioned in any of the briefs but may be considered before us under the general claim of Steadman that he is not liable in this proceeding at all. While the amount of interest involved in this connection is small, still we should not overlook the matter in order that we may not set a wrong precedent for future cases. It is not contended that the amount so due should have been invested. It is too small for that. It may already have been paid over by the administrator. If it has not been paid over, that apparently was on account of the objections filed to the final accounting of the guardians. It has been specifically held that "Nor should a guardian be charged with interest on the balance of his account held ready for distribution, pending the decision of the court on exceptions, unless he has made use of the money * * *." Woerner, The American Law of Guardianship, 1897, p. 223, and see 39 C.J.S., Guardian and Ward, § 87, p. 151. There is no showing that use of the money has been made by the guardians. Obviously they did not know how much *190 to pay over to the administrator with the will annexed until the court settled the account. Unless the money here mentioned has already been paid over to the administrator with the will annexed, the matter as to interest here mentioned should be corrected by the trial court.

B. On the appeal of Oliver W. Steadman.
This involves the item of $1,900 and interest and the item of $5,000 and interest heretofore mentioned. There is no difficulty connected with the first of these items. We have already set out the facts in that connection, from which it appears that that item came into the hands of Wayman and was never in the hands of Steadman. The latter states in his brief:
"* * * Counsel neglects to point out that the $1,900.00 was received by Mr. Wayman on April 23, 1949 and that Steadman did not qualify as Guardian until June 6, 1949. The record further shows that Steadman did not have and could not have any knowledge concerning this $1,900.00 until the Objections to Discharge of Guardian were filed on October 1, 1953. The $1,900.00 never at any time came into the possession of Mr. Wayman as Guardian, nor into the possession of Steadman in any manner, either personally or as Guardian. It seems to us that it is manifestly unfair for the Probate Court to charge Steadman, as co-guardian, with the responsibility for this $1,900.00 of which he had no knowledge and which never came into his possession, either as guardian or as an individual. Mr. Wayman frankly states that this $1,900.00 came into his possession as an individual, but prior to and never within his capacity as guardian. * * *"
It seems to be very clear that the contention of Steadman is well taken. Never having had any connection with this sum of money, he cannot be held liable for it; and the court's order holding him equally liable with Wayman is clearly an error.
*191 We, accordingly, come to consider the item of $5,000 and the interest thereon. The facts in that connection are substantially as follows: On April 14, 1949, Emily M. Johnson deposited the sum of $5,000 in the savings account of the First National Bank of Powell, Wyoming. She and Wayman signed a card in this connection which specifically provided that "The entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor." This provision was separately signed by Emily M. Johnson and Wayman. According to the testimony of Mr. Cornelsen, assistant cashier of the bank, a letter was received by the bank from Mr. Steadman substantially to the effect, if we understand him correctly, that this sum of money should be put into the joint control of Steadman and Wayman; and he also testified that the power given on the card of April 14, 1949, was not canceled. He gives the impression that this was due to inadvertence. On April 16, 1953, Wayman withdrew from the bank the sum of $5,000 above mentioned plus $347.59, a total of $5,347.59. Mr. Cornelsen gives the impression in his testimony that this amount was withdrawn under the card which was signed on July 14, 1949, by Steadman and Wayman, referred to as Objector's Exhibit Number 7. The trouble is that this does not seem to be true. Wayman did not withdraw this money as guardian; but on the face of the record, in any event, he withdrew it in his individual capacity. Wayman testified in that connection that Emily M. Johnson told him for several days that she was going to give him her money. She figured the ranch would take care of her for the rest of her life, but she was going to give him, Wayman, the money and stated, "I want you to have it." She finally asked him to take her to the bank and she then established the account in the bank as of April 14, 1949, as above mentioned. Wayman testified that he took the money out of the *192 bank because it was given to him and that he thought he could spend his own money. He further testified that he deposited the money in a special account and paid the funeral expenses of Emily M. Johnson out of that money; that he also gave a check out of that account for $250 to Steadman. So it is claimed by the administrator herein that Steadman received that amount of money out of the trust fund. Steadman denies that, however, and he seems to be right. He received the check drawn on a special and individual account of Wayman. It does not appear that Steadman knew the source of the money nor that it was in the hands of Wayman unlawfully.
It is also stated that no inventory was filed as should have been done, but while that fact might have been a cause for the removal of Steadman as guardian, it could not itself make him liable for the amount of money heretofore mentioned. The inventory could not in the least change one item of the facts which enabled Wayman to withdraw that money from the bank.
As hereinbefore mentioned, the court charged Steadman with liability for this amount of money equally with Wayman. Wayman received the money; Steadman did not. So the simplest sense of justice suggests at least that Steadman should not be held liable for the money primarily but at most secondarily and that is held to be the law. Thus it is said in the case of In re Prime's Estate, 71 N.Y.S.2d 389, 394, as follows:
"* * * Where one of the executors receives and wastes the estate property, but the circumstances are such that a co-executor is liable to the legatees, the primary liability is that of the executor actively committing the wrongful acts, and his co-executor is responsible only if the legatees cannot secure full recourse from him or his estate. * * *"
*193 So, too, in the case of In re Stell's Appeal, 10 Pa. 149, 153, it is said:
"* * * There is no such thing as the liability of one joint trustee for the misfeasance or nonfeasance of another, unless that other, from insolvency, is unable to answer for himself. Until then, there can be no loss; and it is only when a loss occurs the non-receiving trustee is ever held liable. * * *"
Similar in effect is 21 Am.Jur., Executors and Administrators, § 237, p. 506, n. 2. The same rule, of course, should apply to guardians. Hence, the court erred in holding Steadman liable equally with Wayman.
So we shall proceed and consider as to whether or not Steadman is liable for the amount of money here mentioned even secondarily. We do not think that we need to delve too deeply into the law of liability of one guardian for the acts of another but shall consider it to some extent, thinking that perhaps it might throw some light on the question before us, although we have not been cited to any case at all similar to the case at bar in which a guardian has been held liable for the appropriation or misappropriation of money belonging to an estate by another, his co-guardian. Guardians, executors, administrators, or trustees are fiduciaries and the law in this connection, as applicable to cases like that at bar, must be very similar unless perchance a testator or creator of a trust has made special provisions which should govern.
In 39 C.J.S., Guardian and Ward, § 194, p. 341, it is said:
"Joint guardians are jointly responsible for their joint acts; and each is separately answerable only for his separate acts and defaults, and not for the acts and *194 defaults of his coguardians, unless he expressly or impliedly joins therein. * * *"
It is said in 21 Am. Jur., Executors and Administrators, § 759, pp. 806, 807:
"Ordinarily, a coexecutor or coadministrator is not liable for the acts, defaults, or devastavits of his associates, unless he has in some manner aided, concurred in, or contributed to them. Merely permitting an associate to possess the assets of the estate, without going further and concurring in or negligently permitting their misapplication, does not render one coexecutor answerable for assets received by such associate. * * *"
Also see Annotation of some fifty-four pages in 11 L.R.A.N.S., p. 297 and subsequent pages.
The cases relating to the liability of one fiduciary for the acts of another are not by any means uniform. See 3, Pt. 2, Bogert, Trusts and Trustees, 1946, § 584. We are dealing in this case with a situation in which Steadman cannot be said to ever have had any possession or control over the money in question. The money was in the possession of the bank, or, perhaps, it may be said to have been in the control and possession of Wayman, by reason of the fact that he had at all times the power to withdraw it from the bank, and the authorities which we cite herein are in the main cited in view of that sort of situation. In Jones's Appeal, 8 Watts & Serg. (Pa.) 143, 150, 42 Am.Dec. 282, it is said that one fiduciary is not compelled to consider his co-fiduciary as a rogue and states further:
"The result will depend very much on what is the proper degree of a trustee's vigilance. * * * it is said that he is to be charged only for his own receipts, or for supine negligence, and when the proof of it is strong. * * *"
*195 We presume that the term "supine negligence" means gross negligence. In Head v. Bridges, 67 Ga. 227, 235, the court says:
"* * * The law of the joint liability of executors is that each one is responsible for his own acts only, unless by his own act or gross negligence he enables or permits his co-executor to waste the estate * * *."
In Deaderick v. Cantrell, 10 Yerg. (Tenn.) 263, 31 Am.Dec. 576, 578, it is said:
"* * * in order to charge a trustee for an abuse by his co-trustee, some act of commission must be shown on his part, by which the trust fund was attained by his co-trustee, or some act of commission amounting to gross neglect, in permitting the fund to be wasted. * * *"
3, Pt. 2, Bogert, Trusts and Trustees, § 585, p. 28 and subsequent pages, considers the subject. He calls attention to the fact that the first case on the subject before us was Townley v. Sherborne, J. Bridgman 35, 123 Eng. Rep. 1181. In that case it was held that one trustee or executor cannot be held liable for the misappropriation of money by a co-executor for property in the latter's hands unless he has been guilty of fraud or evil-doing. Bogert, supra, at pages 29, 30 and 31, says:
"* * * This early case which treated exclusive possession by one trustee as natural and the liability of a trustee as confined to his own receipts, in the absence of fraud, has been followed by many English decisions. * * *

* * * * *
"In a number of American cases the doctrine of Townley v. Sherborne has been approved, passive acquiescence in exclusive possession by a cotrustee has not been regarded as negligence or a breach of trust, and the inactive trustee has been absolved from liability. *196 In support of this attitude Finch, J., said in Ormiston v. Olcott: [84 N.Y. 339, 346] `There would be neither wisdom nor justice in a rule which would practically end in making a trustee a guarantor of the diligence and good faith of his associates, and hold him responsible for acts which he did not commit and could not prevent.'"
The author, however, states further at page 31:
"A smaller number of American courts have considered passively surrendering the trust property to the exclusive possession of a cotrustee to be negligence, and have held the inactive trustee liable. * * *"
In § 587 the author lays down a rule that the failure of a fiduciary to supervise the acts of a co-fiduciary will render the former liable. Just how to reconcile this statement with the discussion of the author in § 585 is not quite clear. Obviously where property is in the exclusive control and possession of a co-fiduciary, it is difficult for his associate to supervise his actions. Perhaps the solution is to be found in this: If the property has once been in the possession and control of both, then it must not be surrendered to one of them without retaining some supervision over it. That solution is suggested in the case of In re Estate of Sanderson, 74 Cal. 199, 15 P. 753. The court refers to 3 Williams on Executors, 1895, p. 1820, and then states at p. 759:
"* * * In the American note to the same page are collected many decisions in this country to the effect that where one executor merely permits his co-executor to take possession of assets without going further, and concurring in a misapplication of them, he does not render himself responsible for the receipts of his co-executor.
"* * * It has sometimes been broadly stated that, if an executor turn over assets which he has received to his co-executor, he becomes responsible for the due application *197 and administration of those assets by his co-executor. The rule, as settled by authority, however, and as laid down by Williams on Executors, (bottom p. 1823,) is: `If an executor is merely passive by not obstructing his co-executor from getting the assets into his possession, the former is not responsible. If, however, the one in any way contribute to enable the other to obtain possession, he is answerable, notwithstanding his motive be innocent, unless he can assign a sufficient excuse.' * * *"
This statement is very similar to the statement in 21 Am.Jur., Executors and Administrators, § 759, heretofore quoted. There is no evidence in this case that Steadman concurred in the misapplication of the money by Wayman. There is no evidence even that Steadman in any way permitted Wayman to have possession of the property, in contemplation of the foregoing authorities. On the contrary, according to the testimony herein, Steadman attempted to get the money into the joint control of himself and Wayman. That he failed to succeed therein was not his fault so far as the record herein shows. Steadman requested the bank to put the savings bank account into the joint control of himself and Wayman. Of course he could not compel it to do so, nor could it be done without Wayman's consent. If, however, it was done, as the witness Cornelsen intimated, then the bank did not comply with the rule stated in 9 C.J.S., Banks and Banking, § 337, p. 680, n. 70, to the effect "where a deposit has been made by the executors to their joint account, one cannot make a valid check thereon or receipt therefor." A like rule should apply to guardians. That rule was laid down in a carefully written opinion in De Haven v. Williams, 80 Pa. 480, 21 Am.Rep. 107. It protects both the guardians as well as the ward and, judging from the great amount of litigation that has arisen in connection with the liability of one fiduciary for the acts of another, it is a sound and sane rule. The bank was *198 chargeable with knowledge of the law; and if it permitted Wayman to withdraw the money as guardian (under Objector's Exhibit 7), then it, the bank, should be liable herein for any loss and not Steadman. The latter could hardly be expected to anticipate that both the bank and Wayman would violate the law. However, Cornelsen does not seem to be correct, since the withdrawal of the money by Wayman was, on the face of the record, not as guardian but in his individual capacity; so we shall proceed to consider that phase. In the meantime, we might mention incidentally that on February 14, 1953, in a public document, namely an application of Wayman to be appointed executor of the last will and testament of Emily M. Johnson, of which Steadman was doubtless aware, Wayman had treated the $5,000 as property of the estate of the deceased. In face of that, it is difficult to see how Steadman or anyone else should have anticipated that only two months after that time Wayman should suddenly change his mind and determine that the money belonged to him and withdraw the money from the bank.
In any event the money was deposited in the joint account of Emily M. Johnson and Wayman with the right of either of them to withdraw it, as heretofore mentioned. The fact that the names of Wayman and Steadman were subsequently substituted for Emily M. Johnson did not and could not change the character of the joint account as to Wayman individually or lessen or deprive Wayman of his independent right to the account in his individual capacity. He had a complete and individual right as such joint owner to withdraw the whole or any part of the account as he saw fit. In other words, Steadman had no power whatever to prevent the withdrawal by Wayman. It can hardly be said that Steadman in the exercise of reasonable care should have constituted himself as an arbiter to determine *199 for himself what the court ultimately did, namely that Wayman's authority to withdraw the money and convert it to his own use was unlawful. It took a judgment of the court to determine that. Steadman had no such authority. We think, accordingly, that it is clear that Steadman is not in any way liable for the items heretofore mentioned or the interest thereon.
The trial court is accordingly directed to revise its judgment and make correction in the items of interest heretofore mentioned, and it is further directed to absolve Oliver W. Steadman from any and all liability in connection with the item of $1,900 and interest and the item of $5,000 and interest and to make such further order as may appear to be proper not inconsistent with this opinion. In other respects the judgment herein is affirmed.
Affirmed as modified.

ON PETITION FOR REHEARING.

(No. 2795; February 25, 1958; 322 Pac. (2d) 145)

*200 OPINION.
Mr. Chief Justice BLUME delivered the opinion of the court.
A petition for a rehearing has been filed herein on the grounds that Oliver W. Steadman failed to assign as error that he was held liable for the sum of $5,347.59 ($5,000 plus interest), the savings account mentioned in the original opinion and, further, because he *201 failed to argue the point. We think, however, that the petition for a rehearing is based upon wrong premises. Steadman filed Specifications of Error, part of which are as follows:
"2. The Court erred in entering an Order assessing a money judgment against the Guardians upon the hearing on Objections to Final Accounting.

* * * * *
"4. The Court erred in finding that V.L. Wayman, as Guardian, received the sum of $1,900.00 from Emily M. Johnson on April 23, 1949.
"5. The Court erred in finding that Oliver W. Steadman as Guardian is held to account for money received by his co-guardian, V.L. Wayman, from the ward, Emily M. Johnson, prior to the appointment and qualification of Oliver W. Steadman as Guardian."
Specification Number 2 is all-embracing and includes the item of $1,900 as well as the item of $5,347.59. Number 4 relates to the item of $1,900. Number 5 naturally refers to a different item and refers, as we construed it, to the item in the savings account of $5,347.59. That money was received by Wayman, or at least put into his control, under the arrangement of Emily M. Johnson on April 14, 1949, which was prior to the appointment and qualification of Oliver W. Steadman as guardian as mentioned in Specification Number 5.
It is claimed that Mr. Steadman did not argue his non-liability of the item of $5,347.59. We think he did. He filed two briefs in the case, one entitled "Brief of Oliver W. Steadman, Appellant on Appeal from District Court of Park County, Wyoming", and the other entitled "Brief of Respondent and Co-Guardian, Oliver *202 W. Steadman on Appeal from the District Court of Park County, Wyoming". The latter brief is all-comprehensive. It fully discusses the question of liability for the $1,900 item. We mentioned that in the original opinion herein. He further cited 39 C.J.S. Guardian and Ward § 194, p. 341, which was also cited in the original opinion, stating that one guardian is ordinarily not liable for the defaults of another guardian, and Steadman claimed his exemption from liability for the $5,000 item under that rule. He stated further in that brief:
"* * * but this Respondent does urge upon the Court that since Mr. Wayman received all the funds before any determination of incompetency and before his appointment as guardian  the $1,900.00 absolutely and $5,000.00 in joint tenancy  and that it is freely and frankly shown by Mr. Wayman's testimony that he personally received these funds, that Respondent Steadman cannot be held responsible for such funds. If there were any acts of default, they were of Mr. Wayman alone."
We cannot see how the argument of Mr. Steadman could have been more specific as to both the item of $1,900 and that of $5,347.59 ($5,000 plus interest). It is true that the brief covering these matters is entitled in Case No. 2794, and the brief in Case No. 2795 relates to the jurisdiction of the trial court, but Cases Nos. 2794 and 2795 relate to the same matter  liability of the guardians  and it would be too technical to hold that Mr. Steadman failed to argue the fact that he was not liable for the above item of $5,347.59 when, as a matter of fact, he did so, even though it might perhaps be said that it would have been better or more accurate if he had done so in both of the briefs filed by him in this court. We might add that Steadman argued his non-liability for either of the items above mentioned in his oral argument in this court; and the *203 impression left with us at the end of the argument was that the main questions herein were those relating to Steadman's liability as to either of those items above mentioned.
The petition for rehearing is denied.