V. L. WAYMAN and United States Fidelity and Guaranty Company, a corporation, Appellants (Defendants below),

v.

Eric S. ALANKO, Administrator with Will annexed of the Estate of Emily Mariana Johnson, deceased, Appellee (Plaintiff below).

No. 2928.

Supreme Court of Wyoming.

April 19, 1960.

Francis Kidneigh, Casper and Steadman & Steadman, Cody, for appellant.

Goppert & Fitzstephens, Cody, for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

This is an action brought by Eric S. Alanko, administrator with the will annexed of the estate of Emily M. Johnson, deceased, as plaintiff against V. L. Wayman, who was guardian of Emily M. Johnson, and his surety, the United States Fidelity and Guaranty Company.

The situation in this case was set out in the case of In re Johnson's Estate and Guardianship, 78 Wyo. 173, 320 P.2d 429, 322 P.2d 145, decided January 14, 1958, but it will be well to set out herein the essential facts. On April 14, 1949, plaintiff herein asked for the appointment of a guardian of Emily M. Johnson as an incompetent. An order to that effect was made on May 12, 1949, and V. L. Wayman, one of the defendants herein, and Oliver W. Steadman were appointed guardians. They duly qualified and gave a bond with the surety company above mentioned in the sum of $5,000. On the same day on which the

request for the appointment of guardian was made, namely on April 14, 1949, there was signed a card in the First National Bank of Powell by Emily M. Johnson or V. L. Wayman. The card is dated April 14, 1949. A similar card appears in the record showing that there was deposited in the bank on April 1, 1949, the sum of $5,000. This and the card previously mentioned apparently show that this $5,000 was a joint account of Emily M. Johnson and V. L. Wayman. Another and similar card appears signed by Steadman and Wayman as guardians of Emily M. Johnson. So that there were apparently two different cards for the same money, namely one showing that the money was held by Steadman and Wayman as guardians and the other showing that the money was held for Emily M. Johnson or V. L. Wayman. Emily M. Johnson died on the morning of February 13, 1953. The money in the bank at that time, including interest, had increased to the sum of $5,347.59. On April 16, 1953, after the death of Emily M. Johnson, V. L. Wayman withdrew this amount of money from the Powell bank without designating himself as guardian and apparently the money was withdrawn by him in his individual capacity under the first and second cards above mentioned. Wayman made an application to the court to be appointed administrator of the estate of Emily M. Johnson and stated that the sum of $5,347.59 was a part of the property of the estate. Wayman, however, was not appointed as administrator. The guardians filed a final account on February 25, 1953, but did not account for the money in the Powell bank as above mentioned or the $1,900 which Wayman received from the deceased, Emily M. Johnson, on April 23, 1949. After the final account by the guardians was filed, Eric S. Alanko, plaintiff herein, filed objections to the final account of the guardians, alleging that the $1,900 above mentioned was received by Wayman from Emily M. Johnson while she was incompetent and that the deposit of $5,000 in the First National Bank of Powell was wrongfully converted by Wayman and

Steadman. The court was asked that the guardians be required to account for the $1,900 and the $5,347.59 above mentioned. The matter came on for hearing on May 1, 1957, in the district court sitting in probate. At that time the guardians contended that the $1,900 given by Emily M. Johnson to Wayman was spent in her behalf and they further claimed that the $5,347.59 was not the property of the guardians but belonged to Wayman personally pursuant to the first two cards above mentioned. The court disallowed the contention in reference to the $1,900 but allowed Wayman the sum of $1,010.75 for taking care of Emily M. Johnson. The court further required the guardians to account for the sum of $5,347.-59, except the sum of $489.25 which was expended for funeral expenses, leaving due the sum of $4,858.34. Oliver W. Steadman appealed from the order so made. Eric S. Alanko also appealed, claiming that not sufficient interest had been allowed on the accounts. All the parties gave notice of appeal but the appeal of V. L. Wayman was not perfected. In the hearing in this court Oliver W. Steadman was absolved from all responsibility, but we directed that some additional interest against Wayman should be allowed on the so-called $5,000 item heretofore mentioned.

On April 25, 1958, the matter came again before the District Court of Park County, Wyoming, in pursuance of the mandate by this court and the district court directed "That V. L. Wayman shall pay to the Administrator of the Estate of Emily M. Johnson, deceased, the sum of $4,858.34 with interest at the rate of seven percent per annum from April 16, 1953, and the sum of $889.25 with interest at the rate of seven percent per annum from October 1, 1953." No appeal was taken from that judgment. The money was not paid as directed by the court, but at the time of the hearing and before judgment was entered Wayman paid $1,282.28. Thereupon on June 14, 1958, Alanko, plaintiff herein, brought an action against Wayman and the surety company, the United States Fidelity and Guaranty Company, alleging the appointment of

Wayman and Steadman as guardians; that they gave bond in the sum of $5,000 and that that bond was furnished by the United States Fidelity and Guaranty Company in the sum of $5,000; that thereafter Wayman was ordered to pay to plaintiff the sums hereinabove mentioned; that Wayman as such guardian has failed to pay the money; and that plaintiff on July 27, 1958, made a demand upon the surety company for payment of $5,000. Plaintiff, accordingly, asked judgment against Wayman for the sums above mentioned and judgment for $5,000 with interest from July 27, 1956, against the United States Fidelity and Guaranty Company. The answers by the defendants separately are substantially the same as the contentions made in the guardianship above mentioned, namely that the sum of $1,900 was used on behalf of the deceased, Emily M. Johnson, and that the sum of $5,347.59 belonged to Wayman individually and did not belong to the guardians and was not part of the guardianship. It was agreed that Wayman had not paid the judgments above mentioned. Return to Wayman of the $1,282.28 was also asked. A trial was held before the Honorable Rodney M. Guthrie, who had been called to sit in the case. The judgments and proceedings against Wayman were introduced in evidence. The action taken by the court as previously mentioned was affirmed and, after giving credit for $1,282.28 already paid, judgment was entered against Wayman in the sum of $6,828.41, and judgment was entered against the surety company in the sum of $5,595.90. The judgment further provides in substance that if Wayman should pay any amount over and above the difference between the judgment against Wayman and that of the surety company it should then operate as payment on the latter's judgment pro tanto and vice versa. Thereupon an appeal was taken to this court and the matter is now pending before us. The parties will be referred to herein as in the court below or by name.

1. The contentions made in this court are substantially the same as made in the court below, namely that the $1,900 item above mentioned was received by Wayman before he qualified as guardian and that, accordingly, the surety company cannot be held liable for that sum. It is further contended that the $5,347.59 item above mentioned belonged to Wayman personally pursuant to the joint account in the bank in the names of Wayman and Emily M. Johnson. The trouble in this case is that the defendants herein pay no attention to the judgments rendered in the guardianship matter on May 1, 1957, and again on April 25, 1958. No appeal was taken from either of these judgments either by Wayman or by the surety company. The surety company could have appealed from the order of the probate decree. 25 Am.Jur. Guardian and Ward § 195, p. 122. But it did not do so. The defendants herein attempt to relitigate what has been previously litigated and fully adjudicated. If the district court sitting in probate had jurisdiction to enter the judgments hereinbefore mentioned, then the rule of res judicata applies herein with full force and the defendants cannot relitigate it at this time. Thus it is said in 25 Am.Jur. Guardian and Ward § 171, speaking of a judgment on the final accounting of the guardians:

"* * * In most jurisdictions, this is considered to be a judgment of court, which becomes res judicata and can only be reopened on such proof of fraud or gross mistake as would justify opening any other judgment. Thus, in the absence of fraud, sureties on a guardian's bond are concluded by a decree, entered on a hearing or final settlement, as to the amount of the principal's liability, even though the sureties were not parties to the accounting. * * *"

See also 39 C.J.S. Guardian and Ward § 166; 12 R.C.L. Guardian and Ward § 46, p. 1154. Again it is said in 25 Am.Jur. Guardian and Ward § 195:

"The bond creates a privity of contract between the surety and the guard-

ian on one hand, and the ward on the other. The surety, as well as the guardian, is estopped, after the guardian has filed his bond and received the ward's estate, to deny the validity of his appointment or the capacity of the guardian. If the guardian's account has been settled in probate or in chancery, it is generally held that the judgment is conclusive against the sureties, in the absence of fraud or collusion, as to the guardian's liability and the amount thereof, even though the sureties were not parties to the proceeding * * *."

See also 39 C.J.S. Guardian and Ward § 205. And we may note at this point that it is said in a note to § 2–126, W.S.1957, as follows:

"When liability of administrator becomes fixed, that of surety also attaches, and upon failure of principal to pay money action can be maintained against surety. In such case decree of probate court is conclusive upon status of account as respects sureties as well as administrator. * * *"

A number of California cases are cited.

■ It only remains then to determine whether the court sitting in probate had jurisdiction to determine the liability of Wayman as guardian, that is to say whether or not it had jurisdiction to determine whether or not the $1,900 item and the $5,347.59 item belonged to the guardianship. We think we determined that question fully in the affirmative in the case of Security-First Nat. Bank of Los Angeles v. King, 46 Wyo. 59, 23 P.2d 851, 90 A.L.R. 125. That case contains an elaborate opinion on the question of the power of a district court sitting in probate on the question here involved. The conclusion in the case is stated as follows at 23 P.2d 854:

"It is contended by counsel for defendants that the trial court, sitting in probate, had no jurisdiction to determine the title to the property in dispute, and that it was right in so hold-

ing. It is true that this is the rule in cases in which a third party claims property as against the representative of the estate. 24 C.J. 942. But, due mainly to the necessities of the case, the rule is, by the weight of authority, otherwise when the representative himself claims such property. * * *"

An annotation to the case is contained in 90 A.L.R. 134 in which the annotator states:

"A majority of the jurisdictions follow the rule that a court sitting in probate has jurisdiction to determine the title to property which the personal representative claims in his own right."

Cases from ten states are cited. See also 21 C.J.S. Courts § 303, p. 549; and 5 and 6 Decennial Digest, Courts, ☞200½. The King case involved an executor but it is quite apparent that the rule cannot be different in the case of a guardian. A court sitting in probate has power over the estate in a guardianship as it has over the estate of a decedent. In fact, § 3–20, W.S.1957, provides: "The provisions of this act relative to the estates of decedents, so far as they relate to the practice in the court, apply to proceedings relating to estates of wards." But counsel claim that the rule cannot apply in a guardianship and they cite us to a case from one of the California courts of appeal, namely In re Guardianship of Tompioner, 152 Cal.App.2d 60, 312 P.2d 278. While that case is somewhat different from the case at bar, involving as it does the question of fraud and the question of real property, the case as a whole seems to sustain the contention of counsel for the defendants herein. But the case is contrary to the decisions of the Supreme Court of California. In re Vucinich's Estate and Guardianship, 3 Cal.2d 235, 44 P.2d 567, 570, 571, modified on other grounds 3 Cal.2d 235, 45 P.2d 817, the court, discussing the rule in connection with an executor in a case such as that at bar, also stated as follows:

" * * * It will be readily noted from these citations that the line of demarcation between jurisdiction and

*nonjurisdiction* of the probate court to determine what money or property, title to which is disputed, belongs to the estate, is determined by the status of the claimant. If it is claimed by the executor in his individual capacity, the probate court has power to consider and determine the validity of that claim. But if claimed by or on behalf of a stranger to the estate, the probate court has no jurisdiction to determine the controversy. It appears obvious that the foregoing rules affecting proceedings on accounts of executors and administrators of estates of decedents also apply to those of guardians of estates of minors. This is made manifest by the terms of section 1606 of the Probate Code, wherein it is provided that 'when not otherwise specially prescribed in this division [guardian and ward], practice and procedure and the making and entry of orders under this division shall be governed by the provisions of division III of this code * * *.' "

Again the question arose in the case of Central Bank v. Superior Court, 45 Cal.2d 10, 285 P.2d 906. In that case suit was brought to hold a bank liable by reason of the fact that a guardian had deposited an amount of money in his personal account whereas he should have deposited it in his account as guardian. The court said that the bank was a stranger to the guardianship and could not be held liable by the court sitting in probate, but in the course of the discussion the court stated as follows at 285 P.2d 908, 909:

"The primary question is whether the respondent court sitting in probate can adjudicate a controversy between the bank and the guardianship estate under the undisputed facts, or whether the controversy must be decided by the court in the exercise of its general jurisdiction. It is the general rule that the superior court while sitting in probate is without power to decide a disputed claim between an estate and a

stranger thereto. * * * The same rule applies to guardianship proceedings under the Probate Code, § 1552, Probate Code. But if the controversy is between an estate and those not strangers to probate proceedings relating to the estate, the court sitting in probate has power to entertain the action and adjudicate the conflicting claims. In such a case the contest is often referred to as between those in 'privity' with the estate. * * *

"From the foregoing it follows that controversies properly within an estate proceeding should be adjudicated therein, that is, as necessary incidents of the proceeding. The question then is whether the bank in this case is in 'privity' with the guardianship estate in the sense that the term has been employed in the decisional law on the subject."

It is quite apparent therefore that the contentions of counsel for the defendants in this connection must be and are overruled.

2. Counsel for defendants seem to contend that we practically decided the points here involved in the case of In re Johnson's Estate and Guardianship, 78 Wyo. 173, 320 P.2d 429, 322 P.2d 145. They discuss the question of the $1,900 item and the $5,347.59 item separately. They call our attention to the fact that in the foregoing case we stated that Wayman's conversion of the sum of $1,900 was a simple conversion, not one in a fiduciary capacity. The statement, of course, is literally correct in view of the fact that Wayman received the $1,900 on April 23, 1949, whereas he did not qualify as guardian until the following June. What we said in that case was in connection with the question as to whether or not Wayman should pay interest on the sum mentioned from the date that he received it, and what was said was in connection with the appeal of Alanko as administrator of the estate of Emily M. Johnson. The question did not involve and we did not discuss the question of res judicata which is involved in the case at bar. Coun-

sel for defendants call our attention to cases which hold that sureties on a guardian's bond are liable only for the money or property that actually was in, or came into, the hands of the guardian during the term covered by the bond on which they were sureties. Without deciding the point, we may assume that that is true as a general proposition, but the cases in that connection are not cases such as this. They do not involve the question of res judicata as is true in the case at bar. The foregoing contention should have been raised in the estate of the guardianship and it is too late to raise it now, as we have already shown.

In connection with the item of $5,347.59, counsel call our attention to the fact that we stated in our foregoing case at 320 P.2d 436, "Wayman did not withdraw this money as guardian; but on the face of the record, in any event, he withdrew it in his individual capacity." That is of course literally true, as already mentioned. The statement had a bearing on the liability of Steadman. It does not alter the fact that Wayman received the money while he was a guardian; that he virtually signed for the money as guardian along with Steadman; and that he acknowledged that the money belonged to Emily M. Johnson when he filed his petition to be appointed administrator. Counsel have overlooked what we stated at 320 P.2d 434:

" * * * When Wayman withdrew the money from the bank, he was guardian, hence acting as a trustee. He invested some of the money, according to his testimony, on his own account. On February 14, 1953, he made application to be appointed executor of Emily M. Johnson, then deceased, and listed as part of the property owned by the estate of Emily M. Johnson a savings account of $5,000. He was acting in a fiduciary capacity during the time that he withdrew the money, and we think that he should pay interest on the

amount which he withdrew as of April 16, 1953. * * * "

Furthermore, counsel forget the question that the liability of Wayman was fully adjudicated as heretofore mentioned. In fact, there is no statement in the Johnson case, supra, which in any way supports any contention on behalf of defendants herein.

3. Further, in connection with the contention that since Wayman survived Mrs. Johnson the money became his absolutely against the heirs and administrator, counsel cite us Howard v. Imes, 265 Ala. 298, 90 So.2d 818, 62 A.L.R.2d 1086, and other cases. These cases seem to be of this general effect: When two persons have a joint account, and one of them becomes incompetent and a guardian is appointed for him, such guardian has no power to take possession of all the money for the guardianship and cut off the rights of the person who is not incompetent. In any event these cases are not in point at this stage of the proceedings in this case. They do not involve the question of res judicata. As heretofore shown, the rights of Wayman have been heretofore fully adjudicated. That includes the item of $1,282.28. Hence, the contention here made is not well taken.

4. Counsel say that the action herein should have been against Wayman as guardian rather than against him individually. There is no merit in that contention. If, as a matter of fact, the judgment herein would have been against him as guardian, then the guardianship estate would have been compelled to pay the money which Wayman was ordered to pay. That of course could not be so. In a case such as the case at bar, the suit was properly brought against him in his individual capacity. See 25 Am.Jur. Guardian and Ward § 151; Annotation, 21 A.L.R. 908, 909.

The judgment of the trial court must, accordingly, be and is hereby affirmed.

Affirmed.