[No. 37892. Department One. June 24, 1965.]

NED PADUANO, *Respondent and Cross-appellant*, v. J. C.
BOESPFLUG CONSTRUCTION COMPANY, *Appellant,* ROSE
PADUANO, *Respondent and Cross-appellant.**

*Reported in 403 P.2d 841.

*Allen, DeGarmo & Leedy,* for appellant.

*Benn Agor* and *William L. Williams,* for respondents and cross-appellants.

OTT, J.—J. C. Boespflug Construction Company, a corporation (hereinafter referred to as the construction company), was awarded a $3,000,000 prime contract for the construction of a building project known as Providence Heights College, in King County. The construction company had previously requested Ned Paduano to submit a bid, as a prospective subcontractor, for "clearing and grubbing and site excavation and building excavation, putting footings and excavation, backfilling, stripping and respreading topsoil." After the prime contract was obtained, the construction company awarded Paduano the subcontract for specified excavation work in the sum of $67,509.

Paduano commenced work on December 3, 1958, and continued until October 31, 1959. During this time, Paduano had also performed extra work resulting from change orders which increased the amount of the subcontract to $81,036.05. The project architect, by October 31, 1959, had approved payment to Paduano of $68,636.10, his subcontract then being nearly 88 per cent performed. From the approved payment, the sum of $6,500 was withheld as the retained percentage authorized by § 17 of the subcontract.

October 31, 1959, Paduano left the project, with the knowledge and consent of the construction company, conditioned upon his returning and finishing the work when the construction company requested further performance.

In July, 1960, Paduano was requested to return to complete the subcontract. When he arrived at the job site, construction had not proceeded far enough for Paduano to finish his subcontract. August 8, 1960, Paduano again returned with his men and equipment and, on September 19, 1960, while he was attempting to complete the work, the construction company declared Paduano in default and removed him from the job site. The construction company thereafter completed the subcontract.

Ned Paduano commenced this action to recover the balance due him on the subcontract, contending that the construction company had been arbitrary and capricious in terminating it. The construction company denied the material allegations of the complaint and that any sum was due, and, by counterclaim, affirmatively alleged that Paduano was indebted to the construction company in the sum of $31,055.79.

The cause was tried to the court. The trial court found that the construction company's action in declaring Paduano in default under the subcontract was arbitrary and capricious. It awarded Paduano judgment for $15,471.73, composed of the following items: Retained funds of $6,500; admitted or proved extras of $1,280.75; equipment and operator rental during 1960 of $6,288.49; employees' wages during 1960 of $1,402.49. No loss of profit was awarded to Paduano by the trial court.

The court awarded the construction company a setoff of $8,225.38 against Paduano for labor and equipment rental incurred by the construction company in connection with earth moving on the job site prior to September 19, 1960. The court did not allow a setoff for charges incurred in completion of the project after the construction company had declared Paduano in default, and made no finding as to the cost of completing the subcontract.

From the judgment entered, the construction company appeals and Paduano cross-appeals.

The appellant construction company contends that the court erred in finding that it was arbitrary and capricious in declaring respondent Paduano in default. The default was declared under § 15 of the subcontract which provided:

> If the Subcontractor shall fail to . . . prosecute said work continuously with sufficient workmen and equipment to insure its completion within the time herein specified for completion, . . . or if . . . Subcontractor shall fail to carry on the said work in an acceptable manner, the Contractor may elect to give notice in writing of such default . . . .

The reason appellant gave for declaring the respondent in default was respondent's alleged failure to have sufficient manpower and equipment on the job to insure timely completion of the work in an acceptable manner. The appellant contends that its action was not arbitrary or capricious since there was room for two opinions relative to the cause of the delay, and its action was exercised honestly even though an erroneous decision may have been reached. *Lillions v. Gibbs,* 47 Wn.2d 629, 633, 289 P.2d 203 (1955), and case cited.

In its oral decision, the court stated:

In reviewing the testimony of the defendant [construction company], we find no denial that there was improper staking, improper engineering, necessitating the change in engineers, removal of superintendents, uncontradicted testimony that everybody was behind on the project.

. . . .

He [Paduano] was the contractor on the job, yet in October, 1959, he had gotten off the job and done everything that reasonably could be done at that period of time in the progress of the work. He was to await a call from Mr. Boespflug, Jr., as to the time of return to the job. When the call came, and he proceeded out to the job site, the evidence is quite clear that they were not ready to have him perform. Of course, I recognize that some of this evidence is conflicting, however, the Court accepts Mr. Paduano's version of this, and in large measure it is not contradicted.

There was further testimony by appellant's witness, John F. Boespflug, that a series of strikes during the period of construction caused delays and necessitated an extension of time for completion of the project.

From this evidence, the court entered its finding of fact No. 5 as follows:

On September 19, 1960, defendant [construction company] declared plaintiff [Paduano] in default and removed plaintiff from the Providence Heights College job site. Such action on the part of the defendant was arbitrary, capricious and unreasonable.

The evidence at the trial was conflicting as to the cause of the delay in the completion of the project. The trial court did not accept appellant's version that respondent caused the delay.

■ There is substantial evidence to support the trial court's finding that the appellant was arbitrary and capricious in declaring the default; therefore, the finding must be affirmed. *Choate v. Swanson,* 54 Wn.2d 710, 715, 344 P.2d 502 (1959), and cases cited; *Williams Tilt-up Contractors, Inc., v. Schmid,* 52 Wn.2d 429, 430, 326 P.2d 41 (1958), and case cited.

Appellant next assigns error to the following conclusions of law:

> Plaintiff [Paduano] has performed work for the defendant [construction company] pursuant to express contract therefor and for which he has not been compensated in the sum of $14,190.98. In addition thereto, plaintiff has performed services and furnished materials to the defendant which were in excess of the express agreements but reasonably necessary to defendant's project in the sum of $1,280.75. Conclusion of Law No. 1.

> Plaintiff was required to perform all earth moving processes at the Providence Heights College job site. Defendant is entitled to a set-off against the plaintiff on the theory of quantum meruit for all direct labor charges and equipment rentals incurred by defendant in connection with earth moving processes on said job site prior to September 19, 1960, in the sum of $8,225.38. Defendant is not entitled to a set-off for charges incurred subsequent to September 19, 1960. Conclusion of Law No. 2.

Appellant contends that these conclusions of law are predicated upon an erroneous measure of damages. Appellant asserts, in its brief, that its cost, after September 19, 1960, to correct respondent's errors and complete his subcontract was $40,342.32, and that respondent was not damaged by the declaration of default because the cost of completing the subcontract far exceeded $9,677.10, the remainder to be earned under the subcontract.

■ The rule is stated in *Longenecker v. Brommer,* 59 Wn.2d 552, 558, 368 P.2d 900 (1962), as follows:

When one contracts to perform work for another and is prevented by him from performance, the measure of damages is the difference between the cost of performing the work by the party agreeing to do it, and the price agreed to be paid for it. [Citing cases.]

In Restatement, Contracts § 346, comment g at 578, it is stated:

In order to put the builder in as good a position as he would have been in had the contract been fully performed, it is necessary to give him the full contract price less the amount that he saves by reason of the other party's repudiation. The amount so saved is the cost of completion of the work; but this is less simple than it appears. It is the cost of completion by a reasonably prudent person in the builder's own position that is to be deducted from the contract price, and not the amount that it would cost the defendant or third parties. He may have made advantageous subcontracts that will reduce his cost of completion; and they must be taken into consideration. If the builder has materials on hand as a result of his expenditure under the contract, the reasonable value of those materials is a part of the builder's cost of completion, so far as they would be used up in the process.

The appellant's cost of completing the subcontract is not an element in determining respondent's damages. The proper element is respondent's cost of completion. Appellant did not prove that it would have cost respondent $40,342.32 to complete the contract.

█ It is well established that actual expenditures to the date of a breach of contract are compensable in damages. *Platts v. Arney,* 50 Wn.2d 42, 47, 309 P.2d 372 (1957), and cases cited; *Lloyd v. American Can Co.,* 128 Wash. 298, 308, 222 Pac. 876 (1924); McCormick on Damages § 165, p. 642. In determining respondent's damages, the court did not err in allowing the retained sum for work performed, plus such expenditures as the court allowed to the date of the breach and the approved extras.

█ Respondent has cross-appealed, assigning error to the allowance to appellant of the counterclaim of $8,225.38. The court concluded that "Plaintiff [Paduano] was re-

quired to perform all [specified] earth moving processes at the Providence Heights College job site." Conclusion of Law No. 2, *supra*. After 88 per cent of the earth moving work was completed, it was agreed that respondent could leave the job site with his equipment. This concession was solely for the benefit of the respondent. He was away from the job site for a period of 9 months. The trial court determined that the appellant did perform earth moving work during the 9 months' period that should have been performed by the respondent, and that, when the appellant performed this service for respondent, it acted in good faith. The respondent was enriched to the extent of the reasonable cost entailed in appellant's performance of this portion of respondent's subcontract.

The evidence supports the trial court's award to appellant of $8,225.38, upon the theory of quantum meruit.

Finally, respondent contends that the court erred in failing to allow interest from the scheduled date for completion of the subcontract to the date of judgment, upon sums earned under the subcontract.

Section 17 of the subcontract provided:

Partial payments for work performed under this Agreement will be made by the Contractor as and when it is paid therefor by the Owner, and will equal the value of the work done by the Subcontractor according to the estimate of the Owner's representative at the said unit prices, less the sum of previous payments and less such retained percentage for completion of the contract as Contractor may elect, not to exceed, however, 10 per cent: PROVIDED, that if the Subcontractor is indebted to the Contractor for cash advances, supplies, materials, transportation charges, freight charges, equipment, rental or other proper charges against the work, the amount of such indebtedness may be deducted from any payment or payments made under this provision.

Section 17 authorized the prime contractor (appellant) to withhold up to 10 per cent of the partial payments for work completed. Appellant retained $6,500 of the amount earned by respondent prior to October 31, 1959, which was computed by a standard fixed in the subcontract.

This liquidated sum bears interest from the scheduled date for completion of the subcontract to the date of judgment. *Boespflug v. Wilson,* 58 Wn.2d 333, 336, 362 P.2d 747, (1961), and cases cited; *Mall Tool Co. v. Far West Equip. Co.,* 45 Wn.2d 158, 169, 273 P.2d 652 (1954), and cases cited.

The remainder of the court's award to respondent of $8,971.73 was subject to the deduction of the setoff (§ 17 of the subcontract) in the sum of $8,225.38. These amounts are not liquidated sums for the reason that neither the remainder of the award to respondent nor the setoff to appellant was determinable with exactness from any standard fixed in the subcontract. Each amount was ascertainable only by the introduction of evidence to determine reasonable value of the services rendered and the expenses incurred. *Boespflug v. Wilson, supra; Hopkins v. Ulvestad,* 46 Wn.2d 514, 282 P.2d 806 (1955).

The judgment of the trial court is modified by allowing respondent interest on $6,500 at 6 per cent from September 28, 1960 (when the subcontract was to have been completed) to the date of judgment. As so modified, the judgment is affirmed.

Respondent will recover costs.

ROSELLINI, C. J., HUNTER and HALE, JJ., and BRADFORD, J. Pro Tem., concur.