CHANDLER–SIMPSON, INC., a Corporation, Appellant (Defendant below),

v.

Floyd D. GORRELL, Trustee in Bankruptcy for Paul Eugene Gillett, a Bankrupt, Appellee (Plaintiff below).

No. 3800.

Supreme Court of Wyoming.

Jan. 30, 1970.

**850**

Harold Joffe, of Scott & Joffe, Worland, Thomas M. Burns and Peter J. Wall, of Burns & Wall, Denver, Colo., for appellant.

Floyd D. Gorrell, Worland, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

In a suit on contract, the district court found for plaintiff, Floyd D. Gorrell, trustee in bankruptcy for Paul Eugene Gillett. Judgment was entered against defendant, Chandler-Simpson, Inc., in the amount of $10,812.37.

Chandler-Simpson appeals and claims the district court's judgment should be reversed for these reasons:

1. According to the construction placed by the parties themselves on their written agreement, nothing was owing on the contract.

2. The evidence demonstrates that Gillett was on the verge of bankruptcy and for this reason was not in a position to perform his part of the contract; and this excused defendant from its obligation to perform.

3. Gillett violated his duty to mitigate damages and his trustee should not be allowed to recover.

4. If the right of appellee to recover is sustained, interest prior to the date of the judgment should not be included because the claim was unliquidated.

We are inclined to think plaintiff's claim was unliquidated and that interest prior to the judgment should not have been included. Except for this, however, we find no reversible error in connection with any of the points urged by appellants.

### Contract Interpretation

The contract here involved is one wherein Gillett as owner and lessor leased certain construction equipment to Chandler-Simpson as lessee. The lease agreement was to remain in effect for an indefinite term, but either party had a right to terminate the contract at any time by giving 15 days' written notice to the other party.

▮ Along with other equipment, the lease covered as item (b) a Mack diesel

powered truck and trailer, and as item (c) a D-8 bulldozer. The rental on the Mack truck was to be $12 per hour, and the rental on the D-8 bulldozer was to be $16 per hour. The lease provided, however, that:

"* * * the minimum monthly rental for the diesel powered truck referred to in (b) above will be $800 and the minimum monthly rental for the bulldozer referred to in (c) above will be $1200."

Attorneys for Chandler-Simpson seek to interpret the provision just quoted as if it provided for a minimum monthly rental of $2,000 on item (b) and item (c) together. They say the provision can be so interpreted; that the contract is ambiguous; and that the courts should therefore look to evidence of how the parties, by actual billings, payments, and other procedures, have interpreted their written agreement.

There obviously is no ambiguity in the portion of the contract we have thus far quoted. It clearly provides for a monthly minimum of $800 on the truck and for a monthly minimum of $1200 on the bulldozer.

Before looking to other provisions of the lease for the presence or absence of ambiguity, let us be sure we have in mind the rule on construction of contracts which will apply.

■ Such rule is, where the terms of a contract taken as a whole are plain and unambiguous, the meaning of the contract is to be deduced from its language alone; and where the language is ambiguous, the intent of the parties may be searched out by resort to extrinsic inquiry. Hastings v. Continental Food Sales, Inc., 60 Wash.2d 820, 376 P.2d 436, 438; Cave Construction, Inc. v. United States, 10 Cir., 387 F.2d 760, 762.

■ Inasmuch as the trial court has found and we likewise find the contract of the parties in this case not to be ambiguous, uncertain or indefinite, it is not subject to construction by act of the parties.

Sinclair Oil & Gas Company v. Huffman, Okl., 376 P.2d 599, 601. See also United States, for Use of Moseley v. Mann, 10 Cir., 197 F.2d 39, 40; and Crestview Cemetery Association v. Dieden, 54 Cal.2d 744, 8 Cal.Rptr. 427, 356 P.2d 171, 177.

Following the provision in the lease which calls for a monthly minimum of $800 on the diesel powered truck (item (b)) and for a monthly minimum of $1200 on the D-8 bulldozer (item (c)), the agreement then provides:

"This minimum monthly rentals will apply regardless of whether the equipment is actually used by the Lessor[1], however, should Lessor[2] pay under this minimum rental provision for equipment which was not actually used during any month, it may apply this excess rental payment to the use of the equipment during succeeding months, subject to its obligation that in each month at least the minimum monthly rates as defined in this paragraph be paid. It is understood that the minimum monthly payments herein provided shall not apply to the gasoline powered truck referred to in (a) above nor the roadgrader referred to in (d) above."

It is significant that plurals are used as they are in the provision last quoted. The reference to minimum monthly "rentals" can only refer to the $800 minimum rental and the $1200 minimum rental. It negatives any idea of a single minimum rental, such as $2,000 per month for both items (b) and (c).

Again, the expressed obligation that in each month at least the minimum monthly "rates" are to be paid can only mean at least $800 must be paid on truck (b) and $1200 must be paid on bulldozer (c). It cannot mean that one total "rate" of $2,000 is required for both items of equipment.

The same is true in the last sentence quoted above. The reference to the minimum monthly "payments" once again de-

---

1. Parties agree this word should be "Lessee" instead of "Lessor."

2. Parties agree this word should be "Lessee" instead of "Lessor."

notes that two minimum payments of $800 and $1200 are intended rather than one minimum payment of $2,000.

The unpaid balance which plaintiff has sued for in this case is the difference between what defendant had paid for the use of the bulldozer (item (c)) and what the minimum monthly rental on such bulldozer would amount to. Chandler-Simpson says actual payments made for use of the truck (item (b)) would exceed the minimum monthly rental for such truck far more than the shortage on the bulldozer. It seeks to apply the overpayments on the truck to the underpayments on the bulldozer.

If the contract had provided for one minimum of $2,000 on both pieces of equipment, appellant would be correct; but the contract clearly provides for one minimum on the truck and one minimum on the bulldozer. Therefore, payments for use of the truck in excess of the minimum there applicable cannot be applied to make up a deficiency in the minimum on the bulldozer.

### Effect of Bankruptcy

■ Appellant argues under its point 2 that it was excused from performance because Gillett was on the verge of bankruptcy and not in a position to perform. In this connection appellant states, when Gillett first asserted his claim for minimum payments, in October of 1964, he was in financial jeopardy; his creditors were closing in, and all of his equipment "was about to be taken away from him."

■ It is true the contract provides, when lessor (meaning lessee) pays under the minimum rental provision for equipment not actually used during any month, it may apply the excess rental payment to the use of the equipment during succeeding months. Appellant points to the fact that the time came when Gillett was no longer able to furnish equipment and thus Chandler-Simpson was denied the right to use the bulldozer during future months in excess of the minimum and then apply past

unused minimums to the *excess* in future months.

Appellant's argument fails to consider that either party, including Gillett, had a right to terminate the contract at any time by giving 15 days' notice. Actually, Chandler-Simpson terminated, and the right to earn and apply an *excess* in the future was cut off. The contract fails to provide any adjustment to the lessee when the contract is terminated.

Of course, lessee would be obligated to use and pay for time on the bulldozer in excess of $1200 per month before the "excess" provision would have any bearing. There was no evidence that it had actual future use for the bulldozer to such an extent that it would have created an excess. Therefore, it failed to prove that it was harmed by not having the privilege of creating an excess.

On the other hand, there was evidence that Gillett did perform under the contract and his equipment was used right up to the termination of the lease. In the notice of termination, Chandler-Simpson stated the formal termination would not preclude the possibility that it may in the future have need of Gillett's services upon terms to be negotiated at that time.

■ We do not dispute the authorities cited on behalf of Chandler-Simpson to the effect that, when a promisor in a contract disables himself from performing his obligations, the promisee has the option to treat the contract as ended as far as further performance on the part of promisee is concerned.

However, it is a question of fact for the trier to determine when a party has disabled himself; and the evidence in this case is such that we will not disturb the finding of the trial judge to the effect that Gillett performed up to the termination of the contract. Even if Gillett became unable to perform on account of insolvency, there would still be the question of whether that would relieve Chandler-Simpson from the obligation to pay rentals which accrued prior to any default on the part of Gillett.

*Duty to Mitigate*

■ Whether a plaintiff has failed to use reasonable efforts to mitigate his damages is primarily a question of fact for the trier. Asbell Bros., Inc. v. Nash-Davis Machinery Company, Wyo., 382 P.2d 57, 59.

■ In determining whether Gillett is to be charged with a failure to mitigate damages, the trial court was entitled to consider that Gillett had the duty to keep the bulldozer referred to in (c) available for lessee since, under the lease, it was leased "exclusively to lessee." Moreover, the lease was made with the understanding that "when such equipment is not being used by Lessee it may be hired out to third parties by Lessor."

Thus, even if Gillett had leased the bulldozer out to third parties, it would have been for his own benefit and not in mitigation of damages for the benefit of Chandler-Simpson.

In the light of these considerations, we cannot say the trial court acted improperly because it did not charge Gillett with having failed to mitigate his damages.

*Interest*

■ We have previously indicated we agree with appellant that plaintiff's claim was unliquidated prior to the entry of judgment. Our court has long followed, in general, the rule that interest prior to judgment may not be recovered on unliquidated demands if the amount cannot be ascertained by computation or reference to an established market value. Johnson v. Hanover Fire Insurance Co., 59 Wyo. 120, 137 P.2d 615, 621; Binning v. Miller, 60 Wyo. 114, 146 P.2d 527, 535; Dawson, Corbett & Shelp v. Lieurance & Canfield Const. Co., 68 Wyo. 465, 235 P.2d 457, 464; and In re Johnson's Estate and Guardianship, 78 Wyo. 173, 320 P.2d 429, 434, 72 A.L.R.2d 745, rehearing denied 322 P.2d 145.

More recently, in United Pacific Insurance Company v. Martin & Luther General Contractors, Incorporated, Wyo., 455 P.2d 664, 677, we adhered to the same principle and said the propriety of the court's allowing interest depends entirely upon the status of the claim. In that case, we concluded it could hardly be said a claim such as was there involved, which required weeks to try and which presented myriad, perplexing problems arising out of the loosest kind of arrangement between the parties, showed a claim readily computable by simple mathematical calculations.

In the case we are now dealing with, Gillett made his first demand for lessee to make up a difference under the minimum rental provisions of the lease in October 1964, some 18 months after the lease went into effect. This prompted Chandler-Simpson to immediately serve notice of termination of the lease. It was approximately 16 months more before Gillett rendered any kind of statement to Chandler-Simpson for the amount being claimed by him; and such statement was made only when Gillett's trustee filed the suit here involved.

It is interesting to notice that the plaintiff first claimed a principal sum of $8,960. Later the complaint was amended and the principal amount of the claim was changed to $8,352. It is also important to observe that, when Gillett's petition in bankruptcy was filed in the United States District Court, the claim we are concerned with was listed in this manner:

"Unliquidated claim for $8,000.00 to $10,000.00 due petitioner from Simpson-Chandler, Petroleum Building, Denver, Colorado, as an unpaid balance on an equipment rental agreement."

■ Liquidated claims have been defined as those which are certain by computation from the *face of the contract*, or which might be made certain by reference to well-established market values plus computation. Ansco Construction Company v. Ocean View Estates, Inc., 169 Cal.App.2d 235, 337 P.2d 146, 148–149.

In the *Ansco* case, the court added to the foregoing definition a statement to the ef-

fect that if the amount of the indebtedness or the amount owing can be calculated and determined from statements rendered by plaintiffs to defendants, and the statements are found to be true and correct, it is a matter of mere calculation.

 It is obvious that the amount owing from Chandler-Simpson to Gillett could not be computed from the face of the contract. Also, inasmuch as Gillett rendered no statements or demanded any liquidated sum prior to the filing of suit by his trustee, we are constrained to consider plaintiff's claim as one which was unliquidated.

*Result.* The result of what we have said is that the judgment of the district court must be modified to eliminate the allowance of interest prior to the date of the judgment. As so modified, the judgment is affirmed.

Modified and affirmed.