RISSLER & McMURRY COMPANY,
Appellant and Cross-Appellee
(Plaintiff below),

v.

ATLANTIC RICHFIELD COMPANY,
Appellee and Cross-Appellant
(Defendant below),

v.

CERTIFIED WELDING COMPANY,
Appellee and Cross-Appellee
(A Joined Defendant below).

Nos. 4586, 4587.

Supreme Court of Wyoming.

Jan. 12, 1977.

Harry E. Leimback and David B. Park, Casper, signed the briefs and Harry E. Leimback appeared in oral agrument on behalf of the appellant and cross-appellee Rissler & McMurry Company.

James W. Owens, Murane, Bostwick, McDaniel, Scott, Greenlee & Owens, Casper, signed the briefs and appeared in oral argument on behalf of the appellee and cross-appellant Atlantic Richfield Company.

R. Michael Mullikin, Lathrop, Uchner & Mullikin, Cheyenne, signed the briefs and appeared in oral argument on behalf of the appellee and cross-appellee Certified Welding Company.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

From money judgments in favor of plaintiff Rissler & McMurry Company against defendant Atlantic Richfield Company in the sum of $35,569.30 and against defendant Certified Welding Company in the sum of $5,398.64, based upon jury verdict, plaintiff partially appeals and defendant Atlantic Richfield cross-appeals. Plaintiff Rissler is satisfied with the principal amounts of judgments against each of the defendants but claims the trial court should have allowed prejudgment interest. Defendant Atlantic Richfield in its cross-appeal claims the judgment should have been entirely against joined defendant Certified Welding. Without leaving it a mystery at this point in this lengthy opinion, we announce our intention to affirm the district court excepting to allow prejudgment interest and remand for correction of the judgments accordingly. We shall hereafter refer to Rissler & McMurry as Rissler, Atlantic Richfield as ARCO and Certified Welding as Certified.

There was originally an action filed by ARCO as plaintiff against Rissler for asphaltic materials and petroleum products sold the latter in its highway construction work in the sum of $46,088.94. Rissler refused payment, though it admitted the debt. Its refusal to pay was based on the ground that ARCO, by way of set-off, owed it for paving, equipment rental and base material furnished to ARCO at its Sinclair refinery. ARCO took a consistent position then and still does that Certified agreed to do the work under a written contract for a guaranteed price of $35,000.00, that Rissler was only its subcontractor, that the work was unsatisfactory and incomplete to its damage in the sum of $15,000.00, and the total now claimed against it and what it has already paid exceeds the guaranteed price. Summary judgment was granted ARCO for its $46,088.94, plus interest, on May 15, 1973, but there remained the counterclaim of Rissler.

Thereafter, defendant Rissler joined Certified as defendant in the light of plaintiff ARCO's claim that joined defendant was the contractor, not Rissler, praying that if it be found Certified ordered the work done that Rissler have judgment against that firm for the $40,967.94, together with interest at the rate of 7% from July 20, 1970. Certified denied and still denies that it employed or contracted with Rissler to do the paving for ARCO. For the purposes of trial to prevent confusion, Rissler was redesignated as plaintiff with ARCO and Certified, defendants. We continue that redesignation.

Apparently, during trial, the issues were:

1. Did a valid contract, written or oral, exist between Certified and Rissler for paving plant roads at ARCO's Sinclair refinery?

2. Did a valid contract, either oral or written, exist between Certified and ARCO for paving plant roads at the ARCO refinery at Sinclair, Wyoming?

3. Did a valid contract, written or oral, exist between Rissler and ARCO for the paving of plant roads at Sinclair, Wyoming?

4. What was the reasonable or contract price of labor and materials performed and supplied by Rissler in connection with its work done on the plant roads?

5. Was the work performed in a workmanlike manner?

6. Was Certified limited to the sum of $35,000.00 for all work performed by either Certified or Rissler on the plant roads?

7. To what extent was Certified and (or) ARCO liable to Rissler for work it performed?

The issues here are:

1. Should prejudgment interest be added to the judgments obtained by Rissler against ARCO and Certified as claimed by appellant? The matter of interest was not tried to nor considered by the jury. None of the parties requested jury consideration of interest allowance. The trial court denied prejudgment interest on the verdict amounts though it was timely demanded by Rissler.

2. Did the jury reach a verdict unsupported by the evidence, in favor of Rissler and against ARCO? ARCO, as a cross-appellant, claims the jury reached an erroneous verdict against it instead of Certified because of inadequate jury instructions by the trial judge, which is the real issue presented by cross-appellant.

■ On appeal, evidence advantageous to the prevailing party must be given every favorable inference that can be reasonably and fairly drawn from it, in support of a jury's verdict. *Berta v. Ford*, Wyo.1970, 469 P.2d 12. See West's Wyoming Digest, Appeal and Error, ☞930, for many other cases. As a reviewing court, we cannot substitute our judgment on the facts for the jury's. *Miller v. City of Lander*, 1969, 453 P.2d 889. See West's Wyoming Digest, Appeal and Error, ☞999(1). Any mention of facts in this opinion will be set out in that light unless otherwise noted.

We will first dispose of ARCO's cross-appeal. A narration of the sequence of facts will build up a background which should logically lead us finally into the more important interest question.

In the spring of 1970 ARCO made plans to pave open areas of its Sinclair refinery. At the time, Certified was working at the plant, engaged in performing a welding and piping job, the principal type of work for which it is organized. Certified's general superintendent there had experience with dirt work and was qualified in preparation of roads for paving. ARCO representatives discussed with him the interest of Certified in bidding for the paving job. Certified was not equipped to do paving. At the time, Rissler was in the area doing paving work for the Wyoming State Highway Department, about to finish up its contract and move on. During the course of discussions between ARCO and Certified, it was mentioned that Rissler might be available to do the paving, after base preparation by Certified.

Rissler was contacted by a Certified representative. Rissler's estimator prepared a quotation subject to the limitations that the base work would be done by Certified, the base would be oil primed by another company, and ARCO would furnish and deliver the asphalt liquid material to Rissler's mix plant already set up in the vicinity. Rissler would mix, deliver and lay a paved surface. Rissler quoted a price "three inches thick a dollar seventy five a square yard. That was based on 11,000 square yards." (The 11,000 figure was later reduced to 10,000).

Certified then, in a proposal to ARCO, described the paving in its bid in various ways: "Bid price per sq. yd. is based on 10,000 sq. yds. of asphalt paving 3″ thick on existing Sub-Grade * * *. Firm Lump Sum price based on 10,000 sq. yds. main roadway paving 3″ thick." The bid of Certified was for the whole job, including preparation of the sub-grade and drainage, except that ARCO would furnish the liquid for hot mix and prime coat. The "Firm Lump Sum price" referred to was $35,000.00—10,000 square yards at $3.50 per square yard.

ARCO was fully aware of Rissler's quoted price of $1.75 per square yard, three inches thick for just paving. It was discussed by Rissler's representatives directly with ARCO's representatives as well as when representatives of ARCO, Certified and Rissler were all present. ARCO had received bids from others as well.

■ Rissler was anxious to know whether it would do the work because it wanted to go on to another job. ARCO never did accept the proposal as made by Certified

but issued a "purchase order" for a "guaranteed maximum of $35,000.00," which Certified never accepted. The purchase order became a counter offer and not an acceptance of Certified's proposal, in that it varied the terms of the offer. *Trautwein v. Leavey*, Wyo.1970, 472 P.2d 776, 779. Without any firm commitments ARCO told Certified to proceed with the base. Certified bought crushed base material from Rissler. Certified ran into problems with soft spots where the usual crushed rock base could not be satisfactorily used, so upon consultation with and instructions from ARCO personnel, an asphaltic base in those spots was decided upon.

A further problem developed when it was discovered that the usual plain crushed rock base could not be used over pipes which were under the plant roads. By using tamping equipment, the danger of creating leaks became apparent. Again, an asphaltic mix base was decided upon; such a mix would solidify after being spread. All base material—both crushed rock and special mix—was ordered from Rissler, which it billed to Certified. The crushed base was separately invoiced to ARCO by Certified and came to $5,398.64. ARCO paid that sum to Certified. Certified admitted at the trial that it should have forwarded that amount on to Rissler. The judgment against Certified in that amount is not in dispute. The special asphaltic base material furnished by Rissler was on another bill and we will come to that.

Rissler, shortly before July 1, 1970, began heavily pressing ARCO management for a go ahead because it had to proceed on to its next job. While the evidence at this point becomes conflicting, in the light of the jury's verdict, we conclude that ARCO dealt directly with Rissler and instructed Rissler to proceed on the basis of its quoted figure of $1.75 per square yard, three inches thick. An oral contract was thus formed. That ARCO dealt directly with Rissler is borne out by the fact that instead of billing ARCO for a contract price of $3.50 per square yard, Certified billed ARCO only for laying the base, on a pay-as-they-went basis

for cost plus an item for profit, all of which invoices were paid by ARCO. Furthermore, Certified's proposal included laying the prime coat but ARCO hired someone else to do that. The evidence of an oral contract by ARCO with Rissler was substantial.

The paving phase by Rissler encountered problems. We can conclude by the evidence that acting upon instructions from ARCO personnel, Rissler was directed to lay down up to 16 inches of paving at critical points rather than the uniform three inches anticipated. The net result was that the equivalent of 18,519 square yards of paving at three inches thick was laid down, though the area actually covered was probably about half that figure. There is no evidence, in conflict, that Rissler did not deliver and lay down 3,000 tons of paving material which, if laid at three inches thick, would equal the 18,519 square yards invoiced at $1.75 per square yard for a sub-total of $32,408.25. In its invoice for paving, there was further included the special base mix (393.5 tons at the rate of $7.50) previously mentioned, coming to $2,951.25, plus a sales tax of $50.90 on crushed material, for the grand total of $35,410.40, the special mix quantity and price was not in dispute. The last figure is the exact amount of the jury's verdict in favor of Rissler and against ARCO, when a further amount of $158.90 for equipment rental, to which Rissler was entitled, is added.

■■ ARCO argues that if the jury had been given a "step" or "issue" instruction, it could not have reached the result it did and therefore there was error in that the jury must have been confused. The jury was instructed in the law of written contracts, oral contracts and quantum meruit, though apparently not in the particular form ARCO preferred. In that connection, we do not find attached to its brief the ideal form it suggests nor do we find any reference to any instruction it offered and was refused by the court which demonstrates the standard it urges. We understand a "step instruction" to be one where the jury is directed to step by step consider various prop-

ositions in a particular order. We are familiar with the step instruction as used in murder cases to instruct the jury on how, when and in what order to consider included homicides and offenses. *Evanson v. State*, Wyo.1976, 546 P.2d 412, 415. We are somewhat at a loss, however, to figure out exactly what ARCO has in mind. While ARCO argues that there should have been a step instruction, it offers no authority in support of that proposition. We need not notice a claimed error unsupported by available precedent or cogent argument. *Joly v. Safeway Stores, Inc.*, Wyo.1972, 502 P.2d 362, 365; *Nichols v. Pangarova*, Wyo.1968, 443 P.2d 756, 763.

In examination of the objections to instructions[1] made to the trial judge, we see none made to the form in which they were presented to the jury other than there should have been an "issue" instruction; we find also that not only was no form of "step" instruction offered, no form of "issue" instruction, as visualized by ARCO, was offered to the trial judge for his consideration. Rule 51, W.R.C.P., provides in material part:

"* * * [A]ny party may file written requests that the court instruct the jury on the law as set forth in the requests. * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * * "

As said in *Haley v. Dreesen*, 1975, 532 P.2d 399, 402, that while a clear explanation on the grounds for objection may satisfy the rule, if the objection by counsel,

"* * * is to the form or language of an instruction, rather than to the propriety of giving any instruction on the issue, the best way to inform the court of his position is by the submission of his suggested language, in writing if possible."

There is no showing made that even if a step or issue instruction had been used, any different result would have been reached. The burden is upon the cross-appellant to establish prejudicial error and we have not been convinced.

ARCO seems to be concerned that it does not know whether the jury returned its verdict based on a written contract, an oral contract or quantum meruit. If the cross-appellant wanted the jury to divulge such information, it should have requested such a form of verdict. We find no request for a special verdict in the record nor did the court give one; nor do we find any request for a form of verdict different than the one used. Rule 49, W.R.C.P., provides that the court may require a jury to return a verdict in the form of a special written finding upon each issue of fact. By the same rule, the court may submit a general verdict form, accompanied by written interrogatories, upon one or more issues of fact, the decision of which is necessary to a verdict. The submission or failure to submit a form of special verdict with answers to interrogatories is in the sound discretion of the trial judge and in its absence, a general verdict in favor of a party includes a finding on every material and necessary fact in issue submitted to a jury. *Murphy v. Smith*

---

1. Apparently, the practice of objecting to jury instructions after the jury has retired is continuing in Natrona County District Court. It is being done by stipulation of the parties that no objection will be raised. Even though the parties do so by stipulation, we frown on the avoidance of Rule 51, W.R.C.P., requiring objections to instructions be given before the jury retires. *Jackson v. Gelco Leasing Company*, Wyo.1971, 488 P.2d 1052. The process of making objections to instructions at a time when the court has an opportunity to reflect upon some well-taken objection is a desirable procedure and can avoid error. It serves a well-designed purpose, other than making a record for appeal purposes. *Runnion v. Kitts*, Wyo.1975, 531 P.2d 1307, 1312. We can visualize counsel thinking of objections while the instructions are being given and during argument. They do the court very little good when entered after the jury retires. Here, we even find an untimely objection to oral argument being made along with objections to instructions. It is not an issue in this case but such a practice defeats the purpose of a desirable rule fashioned to permit correction or at least improvement of instructions. Trial judges should not approve such stipulations.

*Trailer Sales, Inc.,* Wyo.1976, 544 P.2d 1006, 1010.

■ It appears to us, after study of the 1,100 pages of record in this appeal, that the jury slashed through the underbrush right to the core of the matter: was there a contract between plaintiff Rissler and defendant ARCO and what sort of contract, if any, was there with Certified? It properly pushed aside the existence of any written contract with Certified and found a complete oral contract between plaintiff and defendant, with a unit of measure within its terms by which it could compute the amount of Rissler's contract entitlement. Resort to quantum meruit was unnecessary. We can find no confusion in the verdict. To the contrary, it applied the extraordinary common sense usually followed by a jury. We hold that the jury was adequately instructed, understood the issues and acted upon the basis of substantial evidence.

■ This court has spoken frequently about the prerequisites to recovery of prejudgment interest and holds with the majority of courts that interest is recoverable on liquidated but not on unliquidated claims and that a claim is considered liquidated when it is readily computable by simple mathematical computation. *Zitterkopf v. Roussalis,* Wyo.1976, 546 P.2d 436; *Mader v. James,* Wyo.1976, 546 P.2d 190; *Chandler-Simpson, Inc. v. Gorrell,* Wyo.1970, 464 P.2d 849, 853 (see Wyoming cases there cited); *United Pacific Insurance Company v. Martin and Luther General Contractors, Incorporated,* Wyo.1969, 455 P.2d 664; *Leet v. Joder,* 1956, 75 Wyo. 225, 295 P.2d 733. See also *Wyoming Construction Company v. Western Casualty and Surety Company,* 10 Cir. 1960, 275 F.2d 97, cert. den., 362 U.S. 976, 80 S.Ct. 1061, 4 L.Ed.2d 1011, allowing recovery of interest on a claim decided on the basis of Wyoming law.

■ While the rule is stated in those cases, it has undergone very little discussion in this jurisdiction. We think the rule needs to be probed in order for there to be an understanding of our holding allowing recovery of interest in this case. The reason for the rule and some of its ramifications may also be helpful in the deciding of future cases. The question has usually been presented as only as incidental issue in a case. Here, it is the principal issue, so we believe it deserves more attention.

Some contracts specifically provide for interest. Those cases can be decided upon their contract terms and regarded as compensation for the use of money or for the extension of credit. The contract in such instance itself governs interest by way of compensation or damages for breach. We are not concerned with that type of contract. We are concerned, as here, with the contract that is silent with respect to interest. While we have statutory provision for the allowance of interest, it does not precisely indicate its application to recovery as a result of litigation.

Section 13–477, W.S.1957, C.1965, in 1970, provided as follows:

"Interest upon the loan or forbearance of money, goods or things in action, shall be at the rate of seven per cent. per annum, unless a greater rate, not exceeding ten per cent. per annum, be contracted for by the parties."

By § 9–103, Ch. 191, Session Laws of Wyoming, 1971, that section was amended to read as follows:

"If there is no agreement or provision of law for a different rate, the interest of [sic] money shall be at the rate of seven percent per annum."

The same words appear also as § 40–9–103, W.S.1957, 1975 Cum.Supp., as part of the Wyoming Uniform Consumer Credit Code. As far as this case is concerned, the law has not changed. The interest rate is adopted only as a convenient measure of damage for loss of use of money and recognizes the legislative view that money has value beyond its intrinsic worth.

None of the Wyoming cases which have been cited clearly particularize that the statute is incorporated as a matter of law in all contracts or whether, where allowed as a part of recovery, interest is added as an item of damages for breach of contract in failure to pay a just claim when due. In

any event, the statutory interest has been used only as the standard for the rate of interest allowed, when the court has determined the amount due is liquidated.[2] Regardless of whether interest is agreed upon in advance or the statutory rate is applied, it constitutes a penalty for failure to pay over money when due.[3]

Rissler was entitled to the use of money which it had earned on its contract with ARCO from the date it became due; its cause of action accrued at that time. Rissler was also entitled to the use of money to which it is entitled from Certified from the date it became due. The use of money has real economic value of which Rissler has been deprived. Money has the ability to reproduce in terms of earning interest. Withholding interest when inappropriate causes the loss of use of a contractor's capital. Interest is a fact of commercial life. In that sense, prejudgment interest is necessary to compensate the plaintiff, not only for the amount by which it has suffered damages in the usual sense for breach of contract but also for the loss of use of the money to which it is entitled. ARCO and Certified have gained the use of money which Rissler has lost and to that extent have been unjustly enriched. We note a particular inequity in this case, when the trial court allowed interest on ARCO's claim against Rissler for petroleum products, properly so, but failed to allow interest to Rissler.

ARCO and Certified contend that Rissler's claim was not liquidated because of the long trial and the contested nature of Rissler's demands. Those factors do not necessarily affect the determination of whether a claim is liquidated or unliquidated. The real consideration is the ease with which the amount due can be reached. A claim is liquidated when it is readily computable by simple mathematical calculation. *United Pacific Insurance Company v. Martin and Luther General Contractors, Incorporated,* supra. In that case, this court affirmed the district court in denying interest on the basis that the claim there in controversy required weeks to try and presented myriad, perplexing problems arising out of the loosest kind of arrangement between the contractor and the subcontractor and that there was not a claim which was readily computable by simple mathematical calculations.

In the case now before us, there was only needed the application of rudimentary arithmetic to predetermined knowns. ARCO was fully aware of Rissler's price for paving: $1.75 per square yard, three inches thick. Rissler's estimator explained, both by letter and testimony, that because of the wide variation in thickness, it could not be computed on an area-covered basis and that is obvious. He explained that a cubic foot of paving material weighs 144 pounds. At that rate, a square yard, three inches thick, weighs 0.162 per ton (3 ft. $\times$ 3 ft. = 9 sq. ft. per yd.; 9 $\div$ 4 = 2.25 cu. ft. per sq. yd.; 2.25 $\times$ 144 = 324 lbs. per sq. yd.; 324 $\div$ 2,000 = 0.162 tons per sq. yd.); 3,000 tons of material used applied to that factor of 0.162 equals an 18,519 yards equivalent; 18,519 sq. yds. $\times$ $1.75 = $32,408.25.

ARCO never questioned that computation. While it tinkered at cross-examination of the estimator, it only strengthened

**2.** Some courts do not use the statutory rate as the measure. For example, see *E. I. Du Pont De Nemours & Company v. Lyles & Lang Construction Company,* 4 Cir. 1955, 219 F.2d 328, cert. den., 349 U.S. 956, 75 S.Ct. 884, 99 L.Ed. 1280, where the court fixed the interest on the basis of what the contractor would have to pay upon a loan of the principal amount of his recovery, considering the state of the money market and rates charged by banks. The court there refused to apply the statutory rate.

**3.** *The text writers and scholars generally observe that the allowance of interest constitutes* damages. Williston on Contracts 3rd Ed. (Jaeger) §§ 1411 through 1413; 5 Corbin on Contracts, §§ 1044 through 1046; McCormick on Damages, §§ 50 through 52; 61 Harvard Law Review 113, 136, Developments in the Law— Damages; 15 Stanford Law Review 107, Prejudgment Interest as Damages; 5 U.C.L.A. Law Review 262, Interest as Damages in California. See also Annotation, 60 A.L.R.3d 487, § 2, 492, Allowance of Prejudgment Interest on Builder's Recovery in Action for Breach of Construction Contract.

the position of Rissler that its unit costs remained the same. ARCO offered no evidence of its own to place Rissler's figures in dispute. Rissler's claim never varied from its initial invoice to verdict. If there was any complexity, it went only to the dispute over who was liable, whether there was a guarantee, the validity of ARCO's counterclaims and those matters have nothing to do with whether a claim is liquidated or not. Proof of the amount of claim and how computed took but a matter of a few minutes.

■ Not only was the computation uninvolved but it used a contract unit standard agreed upon between ARCO and Rissler: $1.75 per square yard, three inches thick. Where there is a standard fixed in the contract, from which the amount earned may be computed, there is a liquidated figure, which should bear interest from the date due. *Paduano v. J. C. Boespflug Construction Company*, 1965, 66 Wash.2d 527, 403 P.2d 841, 845, citing *Mall Tool Co. v. Far West Equipment Co.*, 1954, 45 Wash.2d 158, 273 P.2d 652. In *Elte, Inc. v. S. S. Mullen, Inc.*, 9 Cir. 1972, 469 F.2d 1127, 1133, the *Paduano* rule was laid out more neatly to say that prejudgment interest is allowable (1) when an amount claimed is liquidated or (2) when the amount claimed is unliquidated and this amount is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion.

In his discussion of the rule, McCormick on Damages, § 54 at pp. 215–216, states: " * * * Is the claim for such a sum still a 'liquidated' demand, where the defendant denies all liability under the contract, or disputes liability for certain items and admits others? It would seem that the existence of a dispute over the whole or part of the claim should not change the character of the claim from one for a liquidated, to one for an unliquidated sum, and this conclusion finds support in the cases. * * *
" * * * In short, it is the character of the claim and not of the defense that is

determinative of the question whether an amount of money sued for is a 'liquidated sum.' "

■ The subject, "Award of Prejudgment Interest on Builder's Recovery in Action for Breach of Construction Contract," has received extensive treatment in Annotation, 60 A.L.R.3d 487. It generally agrees in its conclusions with the rule prevailing in Wyoming as to liquidated claims. Of particular interest at this juncture is its analysis beginning at page 512 that virtually every jurisdiction following the rule that when a claim under a construction contract is liquidated, or where the amount thereof, although unliquidated, is capable of ascertainment by calculation by computation, it is also held or recognized that a contractor's right to recover interest on his claim is not barred by the act of the party against whom it is asserted in putting forward an unliquidated counterclaim or set-off. The counterclaim or set-off does not convert a liquidated demand into one that is unliquidated. *Herbert & Brooner Construction Co. v. Golden*, Mo.App.1973, 499 S.W.2d 541; *Knutson v. Lasher*, 1945, 219 Minn. 594, 18 N.W.2d 688, 696; *Hansen v. Covell*, 1933, 218 Cal. 622, 24 P.2d 772, 89 A.L.R. 670; *Pearson v. Ryan*, 1919, 42 R.I. 83, 105 A. 513, 3 A.L.R. 805.

■ Even though the existence of an unliquidated counterclaim or set-off necessarily puts the amount payable in doubt, it is well settled that it does not render the claim itself uncertain or deprive the claimant of the right to prejudgment interest. *Fluor Corporation v. United States ex rel. Mosher Steel Company*, 9 Cir. 1969, 405 F.2d 823, 830, cert. den., 394 U.S. 1014, 89 S.Ct. 1632, 23 L.Ed.2d 40. See also *Jim Arnott, Inc. v. L & E, Inc.*, Colo.App.1975, 539 P.2d 1333, 1340, and *C–Star Concrete Corporation v. Hawaiian Insurance and Guaranty Company*, 1973, 8 Wash.App. 872, 509 P.2d 758. Mere differences of opinion as to the amount due do not preclude prejudgment interest nor do disputes as to liability. *Homes & Son Construction Co., Inc. v. Bolo Corporation*, 1974, 22 Ariz.App. 303, 526 P.2d 1258.

5 Corbin on Contracts, § 1046, pp. 286–287, is approved and applied in allowing interest in *Mitchell v. Flandro*, 1972, 95 Idaho 228, 506 P.2d 455, appeal after remand 96 Idaho 236, 526 P.2d 841:

"In the case of a service contract or a construction contract at an agreed price, when the work has been completed in accordance with the contract, there is a liquidated money debt, even though the defendant may honestly believe that the work has not been properly done. * * In all such cases interest is collectible on the sum due from the date of breach. The fact that a skilled accounting may be necessary, involving a determination of amount of sales, prices received, and overhead expenses does not prevent the allowance of interest."

On appeal, after remand, the court approved the lower court's computation of prejudgment interest.

██ A word of caution is added. The debtor must receive notice of the amount due before interest starts to run. A defendant cannot be in default if he is not informed of what to pay. There must be a fixed and determined amount which could have been tendered and interest thereby stopped. *Binning v. Miller*, 1944, 60 Wyo. 114, 146 P.2d 527. If the amount of the indebtedness or the amount owing can be calculated and determined from statements rendered and found to be correct, it is a matter of mere calculation. *Chandler-Simpson, Inc. v. Gorrell*, supra.

██ The question has been posed as to whether the matter of allowing interest should have been presented to the jury. In *Leet v. Joder*, supra, a denial of interest after jury verdict was upheld on the basis of circumstances in that case. The court said that the power of a court to add interest to a verdict is based on the assumed failure of the jury to grant the plaintiff that to which he is entitled as a matter of law and that a court may not add interest when interest is a part of the damages or when it is impossible to ascertain whether the jury had included interest in the award on an unliquidated contract or claim. This case does not come within either inhibition of the *Leet* decision. The jury was not instructed on the matter of interest and neither party requested such an instruction. The verdict was for the exact amount claimed due under the contract. There is nothing to suggest that interest was included in the amount of the verdict. Indeed, the record is entirely to the contrary. This was an action on contract and does not involve the portion of the Wyoming statute considered in the *Leet* case, which allowed interest "on money * * * due, and withheld by unreasonable delay of payment." [4] The right to interest followed as a matter of law and did not involve any question of fact. *Wyoming Construction Company v. Western Casualty and Surety Company*, supra. See also *Engelberg v. Sebastiani*, 1929, 207 Cal. 727, 279 P. 795, stating that there is no question of fact for a jury to decide, no function of the jury is usurped, interest is incident to an award of the contract price and the plaintiff should not be mulcted of a part of his rightful judgment.

We hold that Rissler was entitled as a matter of law to interest from ARCO at the rate of seven per centum per annum from August 25, 1970, the date that Rissler's bill in the sum of $35,410.40, for paving, and $158.90, for equipment rental, was delivered to ARCO.[5] We hold that Rissler was entitled to interest as a matter of law from Certified on the sum of $5,398.64 from September 17, 1970, the date Certified was billed. The invoice of that date indicates that Certified had previously been invoiced but the first invoice cannot be found in the record.

We affirm the district court in all respects except its failure to provide prejudgment interest. We remand to the trial judge with directions to compute interest at

---

4. Section 13–479, W.S.1957, C.1965. Repealed by § 9–103, Chap. 191, Session Laws, Wyoming, 1971.

5. On May 21, 1975, ARCO deposited with the district court clerk the amount of judgment entered against it.

the rate of seven percent per annum, consistent with this opinion, to the date of the judgment appealed from and enter a modified judgment accordingly.

McCLINTOCK, Justice, dissenting in part, with whom THOMAS, Justice joins.

I concur with the majority in sustaining the judgment of the district court fixing the sum due from ARCO and Certified to Rissler [1] but must dissent from that part of the opinion requiring the inclusion of interest. The majority present a well structured argument, the basis of which is the long and well established rule of this court that claims which are readily calculable by simple mathematical computation [2] from the face of the contract [3] are claims upon which prejudgment interest is to be included in the judgment as a matter of law. [4] They find the parameters for computation on the face of an oral contract which they find was entered into between Rissler and ARCO. This is done by a process of interpretation of the evidence and the jury's verdict, which is unacceptable to me.

As I read the opinion, it holds that although the evidence was conflicting as to the negotiations and arrangements between ARCO, Certified and Rissler, this court is entitled to weigh that evidence and conclude that "ARCO dealt directly with Rissler and instructed Rissler to proceed on the basis of its quoted figure of $1.75 per square yard, three inches thick. An oral contract was thus formed." Using this contract standard agreed upon by Rissler and ARCO of $1.75 per square yard, three inches thick, it then becomes a matter of rudimentary arithmetic to compute the amount due. This results in a liquidated figure "which should bear interest from the date due."

My own examination of the evidence leaves me in doubt that an actual oral contract existed between ARCO and Rissler for the performance of the paving work upon an agreed compensation and were it material to the position which I take I might well disagree. However, throughout the pleading, pretrial and trial stages of the proceedings and upon appeal to this court Rissler has continued to present alternative claims: (1) that either there was an express contract for the furnishing of service and materials at an agreed price permitting appli-

1. Parties are referred to as in the majority opinion.

2. *Zitterkopf v. Roussalis*, 546 P.2d 436, 439 (Wyo.1976); *Mader v. James*, 546 P.2d 190, 195 (Wyo.1976), reh. denied. The principle appears first to have been enunciated in the denial for rehearing in *Kuhn v. McKay*, 7 Wyo. 42, 65, 51 P. 205, 206 (1897), and has been applied in numerous cases as cited in the majority opinion.

3. *Chandler-Simpson, Inc. v. Gorrell*, 464 P.2d 849, 853 (Wyo.1970) appears to be the only Wyoming decision referring to the face of the contract. *Kuhn*, supra n. 2, found the basis for computation in an established market price; others have recognized that this was a valid basis but found that there was no established market price, e. g., *Johnson v. Hanover Fire Insurance Company*, 59 Wyo. 120, 137, 137 P.2d 615, 619–620 (1943).

4. Only for purposes of this dissent do I accept this rule. I am in complete agreement with the majority that the whole matter of prejudgment interest deserves extensive consideration by this court and am sympathetic with their indicated leaning toward the allowance of interest as damages. I note that in only two of our previous decisions, *Leet v. Joder*, 75 Wyo. 225, 244, 295 P.2d 733, 740 (1956), and *In re Johnson's Estate and Guardianship*, 78 Wyo. 173, 186, 320 P.2d 429, 433, 72 A.L.R.2d 745 (1957), has this court ventured any discussion of the subject of interest as damages and both are inconclusive on the point. My own perusal of the texts and authorities cited in note 3 of the majority opinion, particularly *Prejudgment Interest as Damages: New Application of an Old Theory*, 15 Stanford L.Rev. 107 (1962–63) has convinced me that this court needs to reappraise carefully what is to me the unreasonably narrow and inequitable rule of our earlier decisions, and seriously consider whether this court has kept in step with the developing jurisprudence of our sister states on the allowance of interest. Our legislature's amendment of the statute, as shown in the majority opinion, raises interesting questions. If I appear in this note to be talking against my convictions, it is for the reason that those questions should be considered only as they are presented in briefs and arguments of counsel. For this reason I limit my dissent to the narrow issue of allowance of interest as a matter of law upon a readily computable claim.

cation of the contract prices to the work done; or (2) that it did the work with the full knowledge and acquiescence of ARCO and for that reason was entitled to recover the reasonable value of the service and materials furnished, as established by independent evidence, which recovery is usually referred to in the pleadings and arguments as quantum meruit. If it is only the reasonable value of the service and materials that is recoverable, and even if the jury finds such reasonable value to be $1.75 per square yard, 3″ deep, it nevertheless follows that the amount of the claim was not liquidated prior to the suit and could not be so liquidated until the trier of the fact had determined such reasonable value.

I think this qualification is clearly recognized by authorities cited by the majority, particularly those from Washington and the Ninth Circuit. *Mall Tool Company v. Far West Equipment Company*, 45 Wash.2d 158, 273 P.2d 652, 654 (1954); *Paduano v. J. C. Boespflug Construction Company*, 66 Wash.2d 527, 403 P.2d 841, 845 (1965), and *Elte, Inc. v. S. S. Mullen, Inc.*, 469 F.2d 1127, 1133 (9 Cir. 1972), reh. denied, apply a definition of a liquidated claim as stated in McCormick on Damages § 54, p. 213 as one where "the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, *without reliance upon opinion or discretion.*" (Emphasis added) The qualification is clearly applied in *Hopkins v. Ulvestad*, 46 Wash.2d 514, 282 P.2d 806, 810 (1955):

> " * * * This is not a case involving a promise to pay for labor and material at an *agreed rate* and thus capable of being referred to as a 'liquidated' claim. It is rather a case involving an implied promise to pay at a *reasonable rate* for labor and material furnished, and hence is an 'unliquidated' claim. * * * "

No one questions that Rissler was entitled to payment in some amount from someone for the work performed by it, but not only did it introduce evidence tending to justify recovery in contract, it also introduced expert testimony designed to establish the reasonable value of the work done by it. A specific instruction on quantum meruit was objected to only by ARCO and no party contends in this court that the instruction as such did not represent a correct statement of the law. While continuing to claim that the jury could properly have found an oral contract and based its verdict thereon, Rissler has in no way abandoned its previous claims to recovery of the reasonable value of its work. The majority's conclusion that the jury found that there was an oral contract fixing the price of the work, rather than that Rissler was entitled to the reasonable value thereof, is in my opinion unjustified.

In the first reported case of the Supreme Court of Wyoming Territory, *Western Union Telegraph Company v. Monseau*, 1 Wyo. 17, 19 (1870) it was said:

> " * * * [I]f there is evidence proper to be submitted to a jury on the issue before them, it is their province to weigh it; and it must be a very clear case, appealing very strongly to the conscience of the court, to induce or permit us to interfere with their decision. It is not sufficient that another jury might probably arrive at a different conclusion, nor that the court should be entirely satisfied with the verdict; if there is evidence proper for them to consider and tending to prove the issue presented, we must be satisfied with their judgment, unless it is made to appear that their judgment has been unfairly exercised."

This reluctance to weigh evidence has continued throughout the court's history and in *Culver v. Sekulich*, 80 Wyo. 437, 344 P.2d 146, 156 (1959), Mr. Justice Parker, speaking for the court, said:

> " * * * It is the function of an appellate court to ascertain whether or not there was substantial evidence upon which the trier of fact could base its opinion if it believed the testimony. It is not for us to evaluate the evidence that was presented.",

and shortly thereafter in *Neal v. Wailes*, 346 P.2d 132, 134 (Wyo.1959) Mr. Chief Justice Blume expressed it this way:

"* * * It is not proper for this court in a case tried before a jury to exercise any authority beyond the periphery of its ordinary power but leave to the jury the function of finding the facts as heretofore exercised under the rules of common law, reconciling the conflict in the evidence, and drawing its own inference, if more than one inference is permissible. * * * "

If, on conflicting evidence, it is not for us to say what view of the evidence the jury should have accepted, how can we logically hold that where two alternative theories are available to and actively pursued by the prevailing party, we may weigh the evidence and conclude as a matter of law that the jury has found the facts under one theory? The rule that "a general verdict in favor of a party includes a finding on every material, necessary, and issuable fact which has been submitted to the jury," *O'Brien v. General Motors Acceptance Corporation*, 362 P.2d 455, 457 (Wyo.1961), is not helpful because it is only *necessary* facts that are to be so considered as found and in the case at bar a finding of rendition of valuable services and the reasonable value thereof is all that is necessary to sustain the verdict.

I find no cases directly in point on the subject, but in *Schultheiss v. Los Angeles Ry. Corporation*, 11 Cal.App.2d 525, 54 P.2d 49, 50 (1936) it was said:

"It might also be here observed that a reading of the transcript of the evidence in this case clearly shows that the verdict of the jury herein could as well have been based upon a total lack of negligence on the part of respondent as upon contributory negligence upon the part of the appellant through a violation of the ordinance in question. In such a situation appellate courts will not look behind the verdict in an attempt to ascertain the theory adopted by the jury."

In *Lo Galbo v. Columbia Casualty Company*, 234 App.Div. 510, 255 N.Y.S. 502, 504 (1932) judgment had been obtained against a person insured by the defendant insurance company, and it was not clear from the judgment whether the recovery had been based upon negligent maintenance of certain property or upon violation of an applicable city ordinance. In the one instance the indemnifying insuror was liable; in the second it was not. The court said:

"The plaintiff having invoked two grounds of negligence, the general verdict in his favor may not be construed to have been based upon one ground only— the manner of piling the beams."

Summary judgment in favor of the injured party against the insuring company was reversed and the cause remanded for a factual trial.

Since we are not ordinarily the trier of the facts, I do not think that we can assume that burden for the sole purpose of permitting recovery of interest. We have expressly rejected ARCO's objections relative to the failure of the trial court to make the jury indicate the basis of its verdict. I do not think that it then lies within our province to say upon which of two alternative theories, both favorable to the prevailing party and supported by substantial evidence, the jury has found in favor of that party, any more than we are permitted to weigh conflicting evidence and reach a determination thereon contrary to the jury's.

I would affirm the judgment in all respects.